SCHUBERT & REED LLP
Juden Justice Reed S.B.N. 153748
jreed@schubert-reed.com
Three Embarcadero Center, Ste. 1650
San Francisco, CA 94111
Telephone: (415) 788-4220
Fax: (415) 788-0161

Brower Piven, A Professional Corporation
Charles J. Piven
Marshall N. Perkins
World Trade Center Baltimore
401 East Pratt Street
Baltimore, MD 21202
Telephone: (410) 332-0030

**Proposed Liaison Counsel for Proposed Lead Plaintiffs and the Class**

**Proposed Lead Counsel for Proposed Lead Plaintiffs and the Class**

Brower Piven, A Professional Corporation
David A.P. Brower
488 Madison Ave., 8th Fl.
New York, NY 10022
Telephone: (212) 501-9000

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL FEUER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TELIK CORPORATION, MICHAEL M. WICK AND CYNTHIA M. BUTITTA<br>Defendants. | **No. 07-cv-2986 (WHA)**<br><br>**DECLARATION OF JUDEN JUSTICE REED IN SUPPORT OF MOTION OF THE MEHAN GROUP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL**<br><br>**Date:  September 20, 2007**<br>**Time:  2:00 p.m.**<br>**Place:  Courtroom 9, 19th Floor**<br><br>**Hon.  William H. Alsup** |
| PARVIS HATAMI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TELIK CORPORATION, MICHAEL M. WICK AND CYNTHIA M. BUTITTA<br>Defendants. | **No. 07-cv-3454 (MJJ)** |

Sᴄʜᴜʙᴇʀᴛ & Rᴇᴇᴅ LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

I, Juden Justice Reed, hereby declare:

1.    I am an attorney at the law firm of Schubert & Reed LLP.  I submit this declaration in support of the motion of the Mehan Group for appointment as Lead Plaintiff and approval of their selection of Lead and Liaison Counsel.

2.    Attached hereto as Exhibit A is a true and correct copy of the notice published over Business Wire on June 6, 2007.

3.    Attached hereto as Exhibit B is a true and correct copy of the complaint filed on June 6, 2007 in *Andrew R. May v. Telik Corp., et al.,* Docket No. 07-Civ. 4819 (S.D.N.Y. June 6, 2007).

4.    Attached hereto as Exhibit C is a true and correct copy of a chart summarizing the transactions of the Mehan Group in Telik Corporation common stock during the class period.

5.    Attached hereto as Exhibit D are true and correct copies of the plaintiffs' certifications executed by the Mehan Group, demonstrating their class standing and requisite financial interest in the outcome of the litigation.

6.    Attached hereto as Exhibit E is a true and correct copy of the firm resume of Brower Piven, A Professional Corporation.

7.    Attached hereto as Exhibit F is a true and correct copy of the firm resume of Schubert & Reed LLP.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 6th day of August 2007

Juden Justice Reed

# EXHIBIT A

June 6, 2007 4:52 PM ET

**Quote, Chart, News**

Snapshot

Company Report

Quotes

Charts

Key Developments

Recent News

**Research**

SEC Filings

Advisor FYI

CAPS

StockScouter

Earnings Estimates

Analyst Ratings

Financial Results

Insider Trading

Ownership

Message Board

**Guided Research**

Research Wizard

**Find Stocks**

Stock Screener

Stock Power Searches

Top Rated Stocks

**Related Links**

Quote Watchlist

Expert Picks

E-mail & Alerts

IPO Center

Message Boards

Capital Gains Analysis

## Lerach Coughlin Stoia Geller Rudman & Robbins LLP Files Class Action Suit Against Telik, Inc.

Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin")  (http://www.lerachlaw.com/cases/telik/) today announced that a class action has been commenced in the United States District Court for the Southern District of New York on behalf of purchasers of Telik, Inc. ("Telik") TELK common stock during the period between March 27, 2003 and June 4, 2007 (the "Class Period"), including purchasers in Telik's November 5, 2003 and January 28, 2005 stock offerings (the "Offerings").

If you wish to serve as lead plaintiff, you must move the Court no later than 60 days from today. If you wish to discuss this action or have any questions concerning this notice or your rights or interests, please contact plaintiff's counsel, Darren Robbins of Lerach Coughlin at 800/449-4900 or 619/231-1058, or via e-mail at wsl@lerachlaw.com. If you are a member of this class, you can view a copy of the complaint as filed or join this class action online at http://www.lerachlaw.com/cases/telik/. Any member of the purported class may move the Court to serve as lead plaintiff through counsel of their choice, or may choose to do nothing and remain an absent class member.

### Recent investing news

RLPC-UPDATE 1-Myers Industries postpones $950 mln LBO financing

First Data shareholders approve selling to KKR

UPDATE 2-Waste Management profit beats forecasts, shares up

LodgeNet Reports Results for Second Quarter 2007

AMB Property Corporation(R) Acquires 475,000 SF at Port of Hamburg

advertisement

**Related information**

E-mail this article

Print-friendly version

Discuss this article

**Stocks mentioned in this article**

Telik, Inc. (TELK) Stock Quote, Chart, News

The complaint charges Telik and certain of its officers and directors and its underwriters for the Offerings with violations of the Securities Exchange Act of 1934 and the Securities Act of 1933. Telik is a biopharmaceutical company engaged in the discovery, development, and commercialization of small molecule drugs for the treatment of cancer and inflammatory diseases. Telik's lead product candidate during the Class Period was TELCYTA, a small molecule cancer drug product designed to be activated in cancer cells.

The complaint alleges that during the Class Period, defendants made false and misleading statements about the Company's business and prospects, including that they were on track to obtain FDA approval for the use of TELCYTA in the treatment of platinum-resistant or refractory ovarian cancer and small-cell lung cancer, and that TELCYTA was safe and effective for public use and the Company had conducted sufficient clinical studies to prove it. The complaint further alleges that, unbeknownst to the investing public, subjects in the TELCYTA trials were dying at alarming rates and doctors were pulling other subjects out early, compromising the data being gathered. As a result of defendants' false and misleading Class Period statements and omissions, Telik's stock traded at inflated levels during the Class Period, trading as high as $29.04 per share by April 2004, whereby the Company sold over $322 million worth of Telik stock in the Offerings. The Registration Statements and Prospectuses issued in connection with the Offerings were also false and misleading as they misstated the known safety and integrity flaws in the TELCYTA clinical trials.

On December 26, 2006, the Company announced that TELCYTA had failed in three arms of its final clinical testing - showing no efficacy in two of the three arms and unreliable clinical data in two of the three arms. The Company's stock plunged 70% in a single trading session - falling from over $16 per share to below $5 per share. The Company's stock price fell by another 20% on June 4, 2007, following disclosure of just how badly the ovarian cancer arm of the TELCYTA trials had failed, and then nearly 30% to $3.42 per share on June 5, 2007, after the Company disclosed that the FDA had ordered Telik to immediately halt all TELCYTA clinical trials due to the alarming number of fatalities.

Plaintiff seeks to recover damages on behalf of all purchasers of Telik common stock during the Class Period (the "Class"). The plaintiff is represented by Lerach Coughlin, which has expertise in prosecuting investor class actions and extensive experience in actions involving financial fraud.

Lerach Coughlin, a 180-lawyer firm with offices in San Diego, San Francisco, Los Angeles, New York, Boca Raton, Washington, D.C., Houston, Philadelphia and Seattle, is active in major litigations pending in federal and state courts throughout the United States and has taken a leading role in many important actions on behalf of defrauded investors, consumers, and companies, as well as victims of human rights violations. Lerach Coughlin lawyers have been responsible for more than $45 billion in aggregate recoveries. The Lerach Coughlin Web site (http://www.lerachlaw.com) has more information about the firm. *Contact Information:* Lerach Coughlin Stoia Geller Rudman & Robbins LLP Darren Robbins,

# EXHIBIT B

07 CV 4819

JUDGE CROTTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

ANDREW R. MAY, On Behalf of Himself and :    Civil Action No.     JUN 0 6 2007
All Others Similarly Situated,                      :
                                         :    <u>CLASS ACTION</u>

                 Plaintiff,         :
                                           :    COMPLAINT FOR VIOLATION OF THE
     vs.                                    :    FEDERAL SECURITIES LAWS
                                           :
TELIK, INC., MICHAEL M. WICK,         :
CYNTHIA M. BUTITTA, UBS SECURITIES   :
LLC, LEHMAN BROTHERS HOLDINGS     :
INC., BEAR, STEARNS & CO. INC.,         :
NEEDHAM & COMPANY, INC., LAZARD    :
FRÈRES & CO. LLC, FORTIS SECURITIES   :
INC. and J.P. MORGAN SECURITIES INC.,   :
                                           :
                Defendants.      :
                                           :    <u>DEMAND FOR JURY TRIAL</u>

———————————————————————— x

## NATURE OF THE ACTION

1.     This is a securities class action on behalf of all purchasers of the common stock of Telik, Inc. ("Telik" or the "Company") between 3/27/03 and 6/4/07 (the "Class Period"), including purchasers in Telik's 11/5/03 $172.5 million stock offering (the "2003 Offering") and Telik's 1/28/05 $150.9 million stock offering (the "2005 Offering"), against Telik, its Chief Executive Officer and Chairman of the Board, Michael M. Wick ("Wick"), its Chief Financial Officer, Cynthia M. Butitta ("Butitta"), and the underwriters to the 2003 and 2005 Offerings for violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

## INTRODUCTION AND OVERVIEW OF THE ACTION

2.     Telik is a biopharmaceutical company engaged in the discovery, development, and commercialization of small molecule drugs for the treatment of cancer and inflammatory diseases. Its lead product candidate during the Class Period, TELCYTA, is a small molecule cancer drug product designed to be activated in cancer cells. At the start of the Class Period, defendants enrolled TELCYTA in late-stage clinical trials insisting they were on track to obtain U.S. Food and Drug Administration ("FDA") approval for the use of TELCYTA in the treatment of platinum-resistant or refractory ovarian cancer and, later, small-cell lung cancer. Because the primary endpoints of the clinical trials were the survival of a predesignated percentage of study participants, and because defendants stated the studies were "state-of-the-art," with all the "bells and whistles," defendants claimed they would be able to monitor the progress of the studies and report any material changes in the timing of the studies, the number of participants, or any other material factors affecting the studies to the investment community.

3.     Meanwhile, defendants misled analysts, the investing public and even the FDA throughout the Class Period into believing that their novel cancer treatment drug, TELCYTA, was

safe and effective for public use, and that the Company had conducted sufficient clinical studies to prove it. Unbeknownst to the investing public because defendants concealed it, subjects in the TELCYTA trials were dying at alarming rates and doctors were pulling other subjects out early, compromising the data being gathered.

4.     Defendants also publicly stated throughout the Class Period that the Company's clinical trials were subject to the FDA's rigorous "adequate and well-controlled" clinical trial standards, but the TELCYTA clinical trials then underway were anything but "adequate and well-controlled." Instead, they had been haphazardly designed and were being poorly administered, resulting in "dirty" clinical data that would be unacceptable to the FDA. Defendants described the ongoing clinical trials as "robust and sophisticated" and "designed to support a successful New Drug Application (NDA) filing with the FDA for our lead drug candidate, TELCYTA" and claimed the Company was "monitor[ing] patient enrollment levels." Inexplicably, defendants never disclosed that in at least two arms of the final clinical trials, *up to 25% of the subjects were prematurely released from the study*. Defendants would later admit that the data being obtained in another arm of the clinical trial was riddled with inconsistencies rendering it suspect as well. However, defendants concealed until 6/4/07 the full extent of their knowledge of the drug's toxicity and the disastrous trials.

5.     As a result of these false and misleading statements, the price of Telik's stock was artificially inflated during the Class Period. When the Company revealed on 12/26/06 that TELCYTA had failed in three arms of its final clinical testing – showing no efficacy in two of the three arms and impermissibly dirty clinical data in two of the three arms – the Company's stock plunged 70% in a single trading session – falling from over $16 per share to below $5 per share on more than 33 times the previous 30 days' average daily trading volume and erasing more than $600

million in market value. The Company's stock price fell precipitously by another 20% on 6/4/07 following its 6/3/07 disclosure of just how badly the ovarian cancer arm of the TELCYTA trials had failed – with Telik again disclosing that the results had been compromised and subjects were improperly released early, tainting the data. Finally, the stock plunged nearly 30% to $3.42 per share on 6/5/07 after the Company disclosed after the close of trading on the evening of 6/4/07 that the FDA had ordered Telik to immediately halt all TELCYTA clinical trials due to the alarming number of fatalities.

6.    The true facts, which were known by each of the defendants but concealed from the investing public during the Class Period, were as follows:

(a)    The final-stage clinical trials of TELCYTA were not being conducted pursuant to the FDA's rigorous "adequate and well-controlled" clinical trial standards, rendering the data being obtained meaningless;

(b)    Subjects in the TELCYTA clinical trials were experiencing higher mortality rates than those not using TELCYTA;

(c)    Defendants had reason to believe the Company's TELCYTA New Drug Application ("NDA") would be rejected; and

(d)    Defendants knew TELCYTA was not a commercially viable drug candidate.

7.    As a result of defendants' false and misleading Class Period statements and omissions, Telik's stock traded at inflated levels during the Class Period, trading as high as $29.04 per share by 4/04, whereby the Company sold over $322 million worth of Telik stock in two underwritten public stock offerings. The Registration Statements and Prospectuses issued in connection with the 2003 and 2005 Offerings were also false and misleading as they misstated the known safety and integrity flaws in the TELCYTA clinical trials.

- 3 -

## JURISDICTION AND VENUE

8.      Jurisdiction is conferred by §22 of the Securities Act and §27 of the Exchange Act. The claims asserted herein arise under §§11, 12(a)(2) and 15 of the Securities Act and §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.

9.      Venue is proper in this District pursuant to §22 of the Securities Act and §27 of the Exchange Act. Many of the false and misleading statements were made in or issued from this District, including:

(a)      Almost all of the underwriter defendants are headquartered in New York City ("NYC").

(b)      The investment banking and post-offering market-making activities conducted in connection with the two Class Period offerings took place in or were orchestrated from this District.

(c)      Dewey Ballantine LLP, of NYC, served as counsel to the underwriters in connection with both Class Period stock offerings.

(d)      The prospectus issued in connection with the 2003 Offering stated the indentures and notes registered pursuant to that prospectus were to be governed by and construed in accordance with the laws of the State of New York and that the Depository Trust Company, NYC, known as DTC, would be the depositary for all securities issued in book-entry form in the offering.

(e)      Telik conducted its Class Period analyst conferences almost exclusively in or around this District, including the UBS Global Life Sciences Conference in NYC on 9/26/06; the Thomas Weisel Partners Healthcare Conference in Boston on 9/7/06; the Bear Stearns 19th Annual Healthcare Conference in NYC on 9/12/06; the Needham & Company, LLC Fifth Annual Biotechnology and Medical Technology Conference in NYC on 6/14/06; the Wachovia Securities 16th Annual Nantucket Equity Conference in Nantucket, Massachusetts on 6/21/06; the Deutsche

- 4 -

Bank 2006 Health Care Conference in Boston on 5/2/06; the Merrill Lynch Global Pharmaceutical, Biotechnology and Medical Device Conference in NYC on 2/7/06; the Lazard Capital Markets Life Sciences Conference in NYC on 11/30/05; the Thomas Weisel Healthcare Tailwinds Conference in Boston on 9/7/05; the Bear Stearns 18th Annual Healthcare Conference in NYC on 9/13/05; the UBS Global Life Sciences Conference in NYC on 9/27/05; the Bear Stearns Biotechnology Conference in Cambridge, Massachusetts 6/28/05; the Wachovia Nantucket Equity Conference in Nantucket, Massachusetts on 6/29/05; the UBS Global Pharmaceuticals Conference in NYC on 5/24/05; the Fourth Annual Needham Biotechnology Conference in NYC on 5/25/05; the Deutsche Bank 30th Annual Healthcare Conference in Baltimore, Maryland on 5/2/05;  the Merrill Lynch Global Pharmaceutical, Biotechnology and Medical Device Conference in NYC on 2/10/05; the Lazard First Annual Life Sciences Conference in NYC on 11/30/04; the UBS Global Life Sciences Conference in NYC on 9/28/04; the Newsmakers in the Biotech Industry Conference in NYC on 9/9/04; the Thomas Weisel Healthcare Tailwinds 2004 Conference in NYC on 9/8/04; the Third Annual Needham Biotechnology Conference in NYC on 6/17/04; Wick's corporate update at the BIO CEO and Investor Conference in NYC on 2/25/04; Wick's presentation at an Industry Focus Session on reproductive and genito-urinary cancers in NYC on 2/24/04; the Merrill Lynch Global Pharmaceutical, Biotechnology and Medical Device Conference in NYC on 2/4/04; the Piper Jaffray Health Care Conference in NYC on 1/29/04; the UBS Global Life Sciences Conference in NYC on 9/24/03; the Thomas Weisel Partners Healthcare Tailwinds 2003 Conference in Boston on 9/4/03; the Wachovia Securities Thirteenth Annual Nantucket Conference in Boston on 6/25/03; and the Second Annual Needham & Company Biotechnology Conference in NYC on 6/5/03.

      (f)     Telik made and publicized clinical results in or around this District, including announcing and presenting "positive preclinical results with its lead cancer product candidate,

TELCYTA® (TLK286), that support TELCYTA's unique mechanism of targeted activation in cancer cells and the synergy observed when TELCYTA is administered in combination with platinum-based chemotherapeutic drugs" at the 97th annual meeting of the American Association for Cancer Research ("AACR") in Washington, DC on 4/3/06 and presenting "positive interim results from a Phase 1-2a clinical trial of the combination of TELCYTA™ (TLK286) and docetaxel in patients with platinum resistant non-small cell lung cancer (NSCLC)" at the AACR-NCI-EORTC Molecular Targets and Cancer Therapeutics Conference in Boston on 11/19/03.

      (g)    Many of the clinical studies of TELCYTA were conducted in or about this District, including:

- The Phase 2 Study of TLK286 (TELCYTA) in Platinum Resistant Advanced Epithelial Ovarian Cancer conducted at the Memorial Sloan-Kettering Cancer Center in NYC.

- The TLK286 (TELCYTA) in Combination with Paraplatin (Carboplatin) in Recurrent Ovarian Cancer study conducted at Massachusetts General Hospital, Boston, Beth Israel Deaconess Medical Center, Boston, and Dana Farber Cancer Institute, Boston.

- The TLK286 (TELCYTA) vs. Doxil/Caelyx or Hycamtin in Platinum Refractory or Resistant Ovarian Cancer conducted at The Mary Imogene Bassett Hospital in NY; NYU School of Medicine in NYC; The Union State Bank Cancer Center at Nyack Hospital in NY; Med-Onc/Hem, Malone in NY; Gynecologic-Oncology in NY; Memorial Sloan Kettering Cancer Center in NYC; Good Samaritan Hospital Medical Center in NY; Benjamin Schwartz, M.D. in NY; South Bay OB/GYN in NY; Hematology-Oncology Associates of Rockland in NYC; Comprehensive Cancer Center Medical Practice Offices in NYC; Bellevue Hospital Center in NYC; North Shore-Long Island Jewish Health System/Medical Center in NY; New York University Medical Center - Tisch Hospital in NYC; Long Island Jewish Medical Center in NY; The Cancer Institute of New Jersey in NJ; Jersey Shore University Medical Center in NJ; Robert Wood Johnson University Hospital in NJ; St. Elizabeth's Med. Ctr. in Boston; Whittingham Cancer Center at Norwalk Hospital in Connecticut; and Hematology Oncology, P.C. in Connecticut.

- Study of TLK286 (TELCYTA) vs. Gefitinib in Locally Advanced or Metastatic Non-Small Cell Lung Cancer conducted at New York Oncology Hematology, P.C. in NY; Queens Medical Associates in NY; New York Oncology Hematology, P. C. in NY; Business Park Drive in NY; Montefiore Medical Center in NYC; The Jack D. Weiler Hospital of the Albert Einstein College of Medicine in NYC; Albert Einstein Cancer

Center at the Montefiore Medical Park in NYC; Alice Hyde Medical Center in NY; Myrna Sanchez, MD in NY; North Shore Hematology Oncology Associates, P.C. in NY; Cooper Cancer Institute in NJ; Central Jersey Oncology Center in NJ; University Hospital in NJ; Department of Hematology/Oncology in Massachusetts; Saint Vincent Hospital/Worcester Medical Center-Paul Seed in Massachusetts; Fallon Clinic Pharmacy-Linda Tolf, R.Ph. in Massachusetts; Northwestern Connecticut Oncology/Hematology in Connecticut; Charlotte Hungerford Hospital in Connecticut; Northwestern Connecticut Oncology/Hematology in Connecticut; Sharon Hospital in Connecticut; Northwestern Connecticut Oncology/Hematology in Connecticut; New Milford Hospital in Connecticut; Medical Oncology & Hematology, P.C. in Connecticut; Medical Oncology & Hematology, P.C. in Connecticut; Medical Oncology & Hematology, P.C. in Connecticut; Medical Oncology & Hematology, P.C. in Connecticut; and Medical Oncology & Hematology, P.C. in Connecticut.

- TLK286 (TELCYTA) in Combination with Carboplatin (Paraplatin) Versus Doxil in Platinum Refractory or Resistant Ovarian Cancer conducted at Gynecologic Oncology & Minimally Invasive Surgery in NY; The Mary Imogene Bassett Hospital in NY; The Union State Bank Cancer Center in NY; Hematology-Oncology Associates of Rockland in NY; Long Island Jewish Medical Center in NY; North Shore University Hospital in NY; Schwartz Gynecologic Oncology in NY; Jersey Shore University Medical Center in NJ; Jsumc Ob/Gyn in NJ; The Cancer Institute of New Jersey in NJ; Robert Wood Johnson University Hospital in NJ; JFK Medical Center in NJ; A. Richard Miskoff, DO, PA in NJ; Massachusetts General Hospital in Massachusetts; Dana Farber/Partners Cancer Care, Inc. in Massachusetts; Beth Israel Deaconess Medical Center in Massachusetts; Boston Medical Center in Massachusetts; Boston Medical Center - Center for Cancer and Blood Disorders in Massachusetts; Caritas St. Elizabeth's Medical Center in Massachusetts; Perceptive Informatics, Inc. in Massachusetts; University of Connecticut Health Center/John Dempsey Hospital in Connecticut.

- Phase 3 Randomized Study of TELCYTA® + Liposomal Doxorubicin vs Liposomal Doxorubicin in Platinum Refractory or Resistant Ovarian Cancer conducted at Schwaartz Gynecologic Oncology in NY; The Mary Imogene Bassett Hospital in NY; Long Island Jewish Medical Center in NY; North Shore University Hospital in NY; and Monter Cancer Center, Lake Success in NY.

## THE PARTIES

10. Plaintiff Andrew R. May purchased Telik common stock as described in the attached certification and was damaged thereby.

11. Defendant Telik is organized under the laws of Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol TELK.

12.     Defendant Michael M. Wick ("Wick") is, and was at all relevant times, Chairman, Chief Executive Officer ("CEO") and President of the Company.

13.     Defendant Cynthia M. Butitta ("Buttita") is, and was at all relevant time, Chief Operating Officer ("COO") and Chief Financial Officer ("CFO") of the Company.

14.     Defendants Wick and Butitta are referred to herein as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Telik's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them but not to the public, each of these defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations which were being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein at ¶¶25-73, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

15.     Defendant UBS Securities LLC ("UBS") is an investment banking house with offices in this District. UBS served as an underwriter in both the 2003 and 2005 Offerings.

16.     Defendant Lehman Brothers Inc. ("Lehman") is an investment banking house with offices in this District. Lehman served as an underwriter for both the 2003 and 2005 Offerings.

17.     Defendant Bear, Stearns & Co. Inc. ("Bear Stearns") is an investment banking house with offices in this District. Bear Stearns served as an underwriter for the 2003 Offering.

18.    Defendant Needham & Company, Inc. ("Needham") is an investment banking house with offices in this District. Needham served as an underwriter for the 2003 Offering.

19.    Defendant Lazard Frères & Co. LLC ("Lazard") is an investment banking house with offices in this District. Lazard served as an underwriter for the 2003 Offering.

20.    Defendant Fortis Securities Inc. ("Fortis") is an investment banking house with offices in this District. Fortis served as an underwriter for the 2003 Offering.

21.    Defendant J.P. Morgan Securities Inc. ("JP Morgan") is an investment banking house with offices in this District. JP Morgan served as an underwriter for the 2005 Offering.

22.    The entities named as defendants in ¶¶15-21 are referred to herein as the "Underwriter Defendants." The Underwriter Defendants collectively received more than $15 million in underwriting fees in connection with the Class Period offerings and are liable under §22 of the Securities Act and §10b of the Exchange Act and SEC Rule 10b-5. Each of the Underwriter Defendants is a large integrated financial services institution that provides commercial and investment banking services, commercial loans to corporate entities, and advisory services regarding the structuring of financial transactions, acting as underwriter in the sale of corporate securities to the public and providing investment analysis and opinions on public companies, including its clients, via reports issued by securities analysts. In connection with the Exchange Act claims, the Underwriter Defendants engaged and participated in the scheme to defraud purchasers of Telik securities concerning Telik's course of business which operated as a fraud and deceit on purchasers of Telik's securities by rendering all of the above services to Telik in exchange for millions of dollars in investment banking and underwriting fees.

## SCIENTER

23.    Each Individual Defendant had knowledge of Telik's problems and was motivated to conceal such problems. Defendants Wick and Butitta, as CEO and CFO, were responsible for the

reports and claims relating to TELCYTA as well as the press releases issued by the Company. Each Individual Defendant sought to demonstrate that he or she could lead the Company successfully and generate the successful commercialization of TELCYTA, including obtaining FDA approval, and was motivated to engage in the fraudulent practices alleged herein in order to obtain cash and stock bonuses, collectively worth tens of millions of dollars. UBS, Lehman, Bear Stearns, Needham, Lazard, Fortis and JP Morgan, as investment bankers, participated in the Company's early funding rounds and were privy to extensive data concerning the Company's sole product under development.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

24.     These allegations pertain solely to the Exchange Act claims. Each defendant is liable for (i) making false statements, *or* (ii) failing to disclose adverse facts known to them about Telik. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Telik stock was a success, as it (iii) deceived the investing public regarding Telik's prospects and business; (iv) artificially inflated the price of Telik common stock; (v) allowed defendants to obtain larger bonuses which were directly tied to the *perceived* successful efforts to bring the Company's drugs closer to commercialization; (vi) allowed defendants to arrange to sell and actually sell in excess of $322 million worth of Telik stock at artificially inflated prices in the Class Period stock offerings; and (vii) caused plaintiff and other members of the Class to purchase Telik common stock at inflated prices.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS

25.     On 3/27/03, the Company issued a release entitled "Telik Initiates Phase 3 Registration Trial of TLK286 in Ovarian Cancer Patients," which stated in relevant part:

> Telik, Inc. announced the initiation of a randomized, controlled Phase 3 registration trial of TLK286 administered as a single agent in ovarian cancer patients whose disease has progressed following platinum-based chemotherapy and one second-line treatment.

- 10 -

The multinational trial, designated the ASSIST-1 (ASsessment of Survival In Solid Tumors-1) trial, is expected to enroll approximately 440 women. Patients will be randomized to a TLK286 treatment group, or to a control group receiving either Doxil® or Hycamtin®, drugs that are commonly used in the third-line ovarian cancer setting. The study is designed to evaluate whether TLK286 treatment reduces the risk of death, leading to an increase in survival, as compared to the control group treatments.

Results from a Phase 2 single agent study of TLK286 in ovarian cancer were presented at the American Society of Clinical Oncology meeting in May 2002 and at the EORTC/NCI/AACR meeting in November 2002. In this trial, objective tumor responses were observed and median patient survival was estimated at 17 months by Kaplan-Meier analysis.

"Ovarian cancer has the highest mortality rate of all gynecologic malignancies. There is an urgent need for new treatment alternatives since approximately 75% of new cases of ovarian cancer are diagnosed at an advanced stage," said Gail L. Brown, M.D., senior vice president and chief medical officer. *"The objective responses and survival benefit observed with TLK286 in our Phase 2 ovarian cancer trial, the clinical activity reported in other cancers, including non-small cell lung, breast and colorectal, as well as the tolerability profile seen in more than 350 patients, provide a strong foundation for this Phase 3 trial."*

About Ovarian Cancer and TLK286

Approximately 25,400 new cases of ovarian cancer will be diagnosed in 2003, according to the American Cancer Society. Ovarian cancer is the sixth most common cause of cancer-related deaths in the U.S.

*TLK286 is a small molecule prodrug which is activated by GST P1-1, an enzyme present in higher levels in many human cancers than in normal tissues. Upon activation, TLK286 initiates an intracellular process known as apoptosis, or programmed cell death.* Telik has retained worldwide commercialization rights to TLK286.

26.    Based on the representations in defendants 3/27/03 release and other statements by the Company, Wachovia securities issued a research report entitled "Telik Initiates Pivotal Study of TLK286 in Ovarian Cancer" on 3/27/03, which contained the following discussion of the anticipated commercialization of TELCYTA:

*Expectations for Commercialization*

In addition to the Phase III ovarian cancer trial, we expect Telik to initiate a Phase III trial of TLK 286 in second-line, non-small cell lung (NSCLC) cancer

- 11 -

patients in late H2 2003. Based on the timing of these trials, *we estimate that TLK286 could start contributing to revenue in 2006. We estimate that nearly 9,000 patients could receive the drug in 2006, and nearly 19,000 patients could receive it in 2007. Using an estimated price of approximately $11,000 for a course of therapy, we estimate TLK286 sales at $98 million in 2006 and $204.4 million in 2007.* This price is consistent with current pricing on standard-of-care chemotherapy. *Market penetration is estimated at 4.8% for refractory ovarian cancer patients in 2006, and 7.5% in 2007. Market penetration is estimated at 1.5% for refractory NSCLC patients in 2006 and 2.8% in 2007.*

27.    On 4/9/03 the Company issued a release entitled "Telik Announces New Preclinical Data on TLK286 that Supports Unique Mechanism of Activation, and Activity in Combinations with Standard Cancer Drugs." The release stated in relevant part:

Telik, Inc. announced a series of preclinical studies of its TLK286 product candidate, currently in a Phase 3 registration trial for ovarian cancer, and in clinical trials in non-small cell lung, breast and colorectal cancer. The studies were published in the March 2003 Proceedings of the Annual Meeting of the American Association for Cancer Research.

TLK286 is a prodrug which is administered in an inactive form. It is activated in cancer cells by GST P1-1, an enzyme present in higher levels in important cancers including ovarian, lung, breast, colorectal, pancreas and lymphoma, than in normal tissue. *In previous studies, Telik scientists have reported that TLK286 induces cancer cell death via the stress response signaling pathway.* New preclinical data published on TLK286 include:

- **TLK286-induced activation of the stress response apoptotic signaling pathway: confirmation of novel antitumor mechanism of action (Abstract # 2643).** TLK286 toxicity to cancer cells increases in a time- and dose-dependent manner after it is cleaved by GST P1-1. Using an analog of TLK286 that could not be cleaved by GST P1-1, Telik scientists demonstrated that the non-cleavable analog was inactive, and therefore that cleavage is required for TLK286 activation and subsequent cancer cell killing. This result supports the premise that the selective activation of TLK286 within cancer cells contributes to the generally mild side effect profile and antitumor activity of TLK286 seen in clinical trials.

- **Enhanced antitumor activity of TLK286 in combination with oxaliplatin, carboplatin, doxorubicin, paclitaxel and docetaxel in human colorectal, ovarian, non-small cell lung and breast cancer cell lines (Abstract # 1722).** Human cancer cell lines were treated with TLK286 in combinations with several important chemotherapeutic drugs. The studies consistently demonstrated enhanced or synergistic cancer cell growth inhibition. For example, treatment of a colorectal cancer cell line with TLK286 and

oxaliplatin resulted in a fifteen-fold increase in growth inhibition compared to the sum of either agent alone. These data, and the mild, non-overlapping toxicities seen in clinical trials of TLK286, suggest that combinations may be appropriate and provide scientific support for ongoing clinical trials using TLK286 in regimens with docetaxel, carboplatin and doxorubicin (Doxil®).

- **Sensitization of a human cancer cell line to paclitaxel following prolonged treatment with TLK286 (Abstract # LB123).** Following up on the combination studies, Telik scientists examined the effects of prolonged exposure of human ovarian cancer cells to TLK286. TLK286 exposure was associated with enhanced sensitivity of the cancer cells to taxanes, an important class of chemotherapeutic drugs.

28.    On 4/24/03 the Company issued a release entitled "Telik Announces First Quarter 2003 Financial Results." The release stated in relevant part:

Key developments at Telik since the beginning of 2003 have included:

- The initiation of a Phase 3 registration trial of TELCYTA™ in ovarian cancer patients whose disease has progressed following platinum-based chemotherapy and one second-line treatment. The multinational trial, designated the **ASSIST-1** (**AS**sessment of Survival **I**n **S**olid **T**umors-1) trial, is designed to evaluate whether TELCYTA™ treatment reduces the risk of death, leading to an increase in survival, as compared to the control group treatments.

- The publication of new preclinical data that support the ongoing clinical development of TELCYTA™. These data elaborate on the proposed mechanism of activation and activity of TELCYTA™ and describe the use of TELCYTA™ in combination with standard chemotherapeutic drugs.

29.    On Saturday 5/31/03, the Company presented at the American Society of Clinical Oncology ("ASCO") stating that its in-progress follow-up trial on advanced lung-cancer patients treated with TELCYTA confirmed earlier data that the drug increased survival times. At ASCO, defendants explained that TELCYTA's Phase II trial involved non-small cell lung-cancer patients who had failed two or more previous therapies and who had life expectancies of 4-1/2 to 6-1/2 months. Of the 33 patients enrolled, Telik's Senior Vice President and Chief Medical Officer reported that 81% were still alive in an interview with *Dow Jones Newswires* at the ASCO meeting. Other key findings presented included:

- 13 -

- "**Ovarian cancer:** New interim clinical results *confirmed* the significant clinical activity reported in the previous Phase 2 clinical trial of TELCYTA in women with advanced ovarian cancer, and supported the ongoing Phase 3 trial in this potential indication."

- "**Non-small cell lung cancer:** Interim results from a second Phase 2 clinical trial in poor prognosis patients who have failed platinum-containing regimens *confirmed* the results reported in the prior Phase 2 clinical trial in non-small cell lung cancer, in which disease stabilization was associated with a median survival that was significantly improved over that expected for these patients."

- "In these clinical trials, as in the previous clinical trials, TELCYTA treatment was *well-tolerated, with most side effects mild and reversible.*" Defendants stated there were few "grade 1" and "grade 2" side effects and no "grade 3" or "grade 4" events experienced.

- Telik "plan[ed] to initiate a registration Phase 3 Trial of TELCYTA™ for the treatment of advanced non-small cell lung cancer."

30.    On 6/1/03, the Company issued a release entitled "Telik Announces Confirmatory Results from Second Phase 2 Trial of TELCYTA™ in Advanced Non-Small Cell Lung Cancer," which stated in relevant part:

Telik, Inc. announced positive interim results from a second Phase 2 trial which confirm the clinical activity of TELCYTA™ (TLK286) administered as a single agent in the treatment of patients with non-small cell lung cancer who have failed platinum-containing regimens. The data were presented at the annual meeting of the American Society of Clinical Oncology in Chicago.

Interim results from this trial show an 8% objective response rate (one partial response by the RECIST criteria), one minor response (8%) and a 67% overall disease stabilization rate. Median duration of stable disease is greater than 4.5 months and ongoing. Median survival has not yet been reached. TELCYTA™ continues to be well-tolerated, with the most common adverse events in this trial categorized as Grade 1 or 2 (mild to moderate). There were few Grade 3 and no Grade 4 adverse events. Thirty-three patients with Stage IIIB or IV non-small cell lung cancer were evaluable for survival and 12 patients were evaluable for tumor response at the time of interim analysis. Half had failed prior platinum therapy and two-thirds also were resistant to paclitaxel.

"Advanced, chemotherapy-resistant non-small cell lung cancer patients have a predictably poor prognosis, and published clinical trials with second- and third-line agents for the disease have shown low response rates and median survival times from four to six months," said Gail L. Brown, M.D., senior vice president and chief medical officer. "In the earlier Phase 2 trial of TELCYTA™ in non-small cell lung cancer, median survival was significantly improved over that expected for these

patients. We are encouraged that the objective responses and high disease stabilization rate may translate to a survival advantage in this ongoing trial."

Telik plans to initiate a registration Phase 3 trial of TELCYTA™ for the treatment of advanced non-small cell lung cancer.

In Phase 2 trials, TELCYTA™ has demonstrated clinical activity in ovarian, breast and colorectal cancer, in addition to non-small cell lung cancer. A high proportion of these tumors express GST P1-1, which activates TELCYTA™ within the tumor.

31.    On 6/2/03, the Company issued a release entitled "Telik's TELCYTA™ (TLK286) Demonstrates Significant Clinical Activity in Advanced Metastatic Breast Cancer," which stated in relevant part:

Telik, Inc. announced positive interim results from the first Phase 2 study of TELCYTA™ (TLK286) in the treatment of women with advanced metastatic breast cancer. The data were presented at the annual meeting of the American Society of Clinical Oncology in Chicago.

There was a 15% objective response rate (one complete response and two partial responses by RECIST criteria), and a 35% overall disease stabilization rate in this poor prognosis patient group. Median duration of stable disease is greater than 4 months and ongoing. TELCYTA™ continues to be well-tolerated, with the most common adverse events in this trial categorized as Grade 1 or 2 (mild to moderate). There were few Grade 3 and no Grade 4 adverse events.

The interim analysis is based on 40 women with Stage IV metastatic breast cancer, 20 of whom were evaluable for tumor response at the time of interim analysis. All of the patients had failed two or more prior therapies including anthracyclines and taxanes. Most of the patients have disease that had metastasized to two or more organ systems.

"We have for the first time demonstrated responses to TELCYTA™ in advanced metastatic breast cancer, in women who have exhausted essentially all treatment alternatives," said Gail L. Brown, M.D., senior vice president and chief medical officer. *"The interim results of this trial, including objective complete and partial responses, support further testing of TELCYTA™ in advanced breast cancer, a very difficult to treat cancer, as a single agent as well as in combination regimens in less advanced patients."*

In Phase 2 trials, TELCYTA™ has demonstrated clinical activity in ovarian, non-small cell lung and colorectal cancer, in addition to breast cancer. A high proportion of these tumors express GST P1-1, which activates TELCYTA™ within the tumor.

- 15 -

32.    On the positive 5/31/03-6/2/03 statements, Telik shares spiked $1.44, or 9.5%, to over $16 per share on 6/2/03.

33.    On 6/5/03, Wick made a presentation at defendant Needham's Biotechnology Conference in NYC. The event was later webcast from Telik's website.

34.    On 6/18/03, Wick made a presentation at the Thomas Weisel Partners Growth Forum in Santa Barbara, California. The event was later webcast from Telik's website.

35.    On 6/25/03, Wick presented at the Wachovia Securities Nantucket Conference. The event was later webcast from Telik's website.

36.    On 7/30/03, the Company issued a press release entitled "Telik Announces Second Quarter 2003 Financial Results," which stated in relevant part:

> At the annual meeting of the American Society of Clinical Oncology (ASCO) in May 2003, Telik reported positive new interim results from Phase 2 clinical trials of TELCYTA™ in ovarian, non-small cell lung and breast cancer. Key findings included:
>
> **Ovarian cancer:** New interim clinical results confirmed the significant clinical activity reported in the previous Phase 2 clinical trial of TELCYTA™ in women with advanced ovarian cancer, and support the ongoing Phase 3 trial in this potential indication.
>
> **Non-small cell lung cancer:** Interim results from a second Phase 2 clinical trial in poor prognosis patients who have failed platinum-containing regimens confirmed the results reported in the prior Phase 2 clinical trial in non-small cell lung cancer, in which disease stabilization was associated with a median survival that was significantly improved over that expected for these patients.
>
> *    *    *
>
> In these clinical trials, as in the previous clinical trials, TELCYTA™ treatment was well-tolerated, with most side effects mild and reversible.

37.    During the Company's earning conference call held on 7/30/03 following the release, Wick stated the "strict, independently verified response criteria" being employed in the ovarian cancer arm of the studies were typically reserved only for use in Phase III trials, but that they were

- 16 -

being employed in this Phase II trial as part of the Company's "strategy of *reducing risks going forward by conducting Phase 2 trials to Phase 3 standards." Defendants also stated that the Company's quarterly cash burn would increase to between $55 and $60 million per quarter when the Phase III ovarian study began*.

38.    On 8/14/03, the Company issued a release entitled "Telik Announces Positive Follow-Up Results from Phase 2 Trial of TELCYTA™ in Advanced Non-Small Cell Lung Cancer," which in large part confirmed the efficacy data presented at the 5/03 ASCO meeting.

39.    On 9/3/03, the Company announced it had received "FDA Fast Track Designation" for TELCYTA for the treatment of ovarian cancer. The Company's release explained that "Fast Track programs are designed to facilitate the development and expedite the review of new drugs that are intended to treat serious or life-threatening conditions *and that demonstrate the potential to address unmet medical needs*."

40.    On 9/4/03, Wick presented at the Thomas Weisel Partners Healthcare Tailwinds 2003 Conference in Boston. The event was later webcast from Telik's website.

41.    On 9/5/03, Wick presented at defendant Bear Stearns' 16th Annual Healthcare Conference in NYC. The event was later webcast from Telik's website.

42.    On 9/19/03, Wick presented at defendant UBS's Global Life Sciences Conference in NYC. The event was later webcast from Telik's website.

43.    On 10/1/03, Telik announced the successful completion of FDA Special Protocol Assessment review for TELCYTA for the treatment of lung cancer in the ASSIST-2 trial which would compare TELCYTA's performance to that of Iressa.

44.    On 10/21/03, Wick presented at Rodman & Renshaw Techvest Healthcare Conference in Boston. The event was later webcast from Telik's website.

45.    On 10/29/03, the Company issued a press release entitled "Telik Announces Third Quarter 2003 Financial Results," which stated in relevant part:

- The Phase 3 clinical trial protocol for TELCYTA™ in advanced non-small cell lung cancer (NSCLC) has successfully completed Special Protocol Assessment (SPA) review by the U.S. Food and Drug Administration. The protocol for the ongoing Phase 3 TELCYTA™ trial in platinum refractory or resistant ovarian cancer previously underwent successful SPA review.

- Telik received FDA Fast Track designation for TELCYTA™ for third-line treatment in patients with platinum refractory or resistant ovarian cancer.

- At the Tenth World Conference on Lung Cancer, Telik reported maturing results from a Phase 2 trial of TELCYTA™ in advanced non-small cell lung cancer, demonstrating an 11% objective response rate and 69% overall disease stabilization rate.

- Telik reported interim data from three Phase 1-2a clinical trials in which TELCYTA™ was used in combination with standard chemotherapy drugs. *Results indicate that the combinations were well tolerated at all doses tested.* In the carboplatin combination trial in heavily pretreated, third-line or greater patients who had failed a platinum-containing regimen, five of eight evaluable patients (63%) had objective tumor responses by the RECIST criteria, including one complete response, and an 88% overall disease stabilization rate was observed. In the docetaxel combination trial in second and third-line non-small cell lung cancer patients, three of 14 evaluable patients (21%) who received full doses of TELCYTA™ and docetaxel had objective tumor responses by the RECIST criteria, and the overall disease stabilization rate was 64%. In combination with Doxil®, the combination resulted in a 33% objective response rate by the RECIST criteria and 100% disease stabilization rate among the three evaluable ovarian cancer patients treated with the highest dose of each drug.

46.    On 10/29/03, defendants also announced the Company would complete an equity offering of six million shares of Telik stock, with five million shares to be issued and sold by the Company and one million shares of previously issued stock to be sold by selling stockholder Sanwa Kagaku, one of Telik's early venture backers. Defendants UBS, Lehman, Bear Stearns, Needham, Lazard and Fortis would underwrite the offering. On 11/6/03, Telik announced its Registration Statement had been declared effective and priced the 2003 Offering at $20 per share. In total, with the underwriter's allotment of additional shares, 8.625 million shares would be sold in the 2003 Offering, of which 7.625 million were sold by Telik and one million were sold by Sanwa Kagaku,

for total gross proceeds of $172.5 million. Because the 2003 Offering was a "shelf registration," Telik's filings with the SEC after the Prospectus was declared effective would automatically be "incorporated by reference" as was the Company's 7/30/03 press release (described above in ¶36). The Prospectus filed in connection with the 2003 Offering also contained the following false and misleading statements:

(a)     Defendants' statement that TELCYTA's ability to "bind[] to GST P1-1 inside a cancer cell" caused "a chemical reaction [to] occur[], releasing fragments of TELCYTA *that cause[d] programmed cancer cell death, or apoptosis*," was false and misleading because it concealed that an unacceptably high level of side effects had been experienced during the Phase II testing of TELCYTA;

(b)     Defendants' statement that Telik had "initiated a Phase 3 registration trial of TELCYTA for the treatment of ovarian cancer in March 2003" was false and misleading as the ASSIST-1 study underway was not "*adequate and well-controlled*" and thus its results would not be accepted by the FDA as "*substantial evidence*" of TELCYTA's efficacy;

(c)     Defendants' statement that "[r]esults from . . . trials [evaluating more than 400 cancer patients in 12 clinical trials] indicat[ing] that TELCYTA [was] generally well tolerated, with mostly mild to moderate side effects" was false and misleading because it concealed that subjects in the Phase II testing had experienced an unacceptably high level of side effects;

(d)     Defendants' statement that in "June 2003, at the American Society of Clinical Oncology annual meeting, [the Company] announced positive interim results from the multimember Phase 2 trials of TELCYTA in ovarian, non-small cell lung . . . cancer," with TELCYTA "demonstrat[ing] significant single agent antitumor activity, including multiple objective tumor responses and prolongation of expected survival in patients who were unresponsive to standard

treatments" in the ovarian cancer trial, was false and misleading because it concealed that subjects in the Phase II testing had experienced an unacceptably high level of side effects;

       (e)   Defendants' statement that the Company's "strategy" was to "develop product candidates with a clear path to regulatory approval and the potential to show *early evidence of clinical efficacy*," allowing Telik to "reduce the risk inherent in drug discovery and accelerate the commercialization of [its] drug candidates," was false and misleading as it concealed that subjects in the Phase II testing had experienced an unacceptably high level of side effects and that the ASSIST-1 trial then underway was not being conducted in an "adequate and well controlled" fashion, as would be required to be acceptable to the FDA.

47.    On 11/11/03, Wick presented at the 2003 Credit Suisse First Boston Health Care Conference in Phoenix, Arizona. The event was later webcast from Telik's website.

48.    On 12/2/03, the Company announced it had received "FDA Fast Track Designation" for TELCYTA for the treatment of non-small cell lung cancer. The Company's release explained that "Fast Track programs are designed to facilitate the development and expedite the review of new drugs *that demonstrate the potential* to treat serious or life-threatening conditions and address unmet medical needs."

49.    On 1/23/04, Wick presented at the Piper Jaffray Health Care Conference in NYC. The event was later webcast from Telik's website. On 2/4/04, Wick presented at the Merrilll Lynch Global Pharmaceutical, Biotechnology and Medical Device Conference in NYC.

50.    On 2/19/04, the Company issued a press release entitled "Telik Announces Fourth Quarter and Year-End 2003 Financial Results," which stated in relevant part:

- Telik reported positive, confirmatory results from additional Phase 2 studies of TELCYTA™ administered as a single agent in ovarian and non-small cell lung cancer at the American Society of Clinical Oncology meeting in June.

*   *   *

- The Phase 3 registration trial of TELCYTA™ in ovarian cancer was initiated. The trial is designed to enroll approximately 440 women with platinum refractory or resistant ovarian cancer who have also failed treatment with one of the approved second line agents.

- A Phase 3 registration trial of TELCYTA™ in platinum resistant non-small cell lung cancer was announced and is scheduled to begin in the current quarter.

- The protocols for the TELCYTA™ Phase 3 registration trials were reviewed by the FDA under Special Protocol Assessments, and the FDA granted Fast Track status for TELCYTA™ for the treatment of ovarian and non-small cell lung cancer in the third line setting.

- Positive interim clinical results were reported using TELCYTA™ in combination treatment regimens with carboplatin, Taxotere® and Doxil®, drugs that are used in current front line and second line chemotherapy.

51.    During the Company's earnings conference following the release, Wick assured investors that in the Company's earlier trials of TELCYTA, the Company had "attempted to *reduce development risks* by conducting nine successful Phase II trials in four indications." Wick also assured investors that TELCYTA had been "measure[d] . . . against a high hurdle in order to estimate its *realistic potential early in the development process,*" that the earlier testing had been designed to ensure that "whatever positive effects observed *could be attributed to TELCYTA*, and whatever negative effects observed *were also due to TELCYTA,*" and that "more stringent . . . criteria" had been employed "to assess tumor response." Wick also explained that "TELCYTA [was] *very well tolerated across all of [the Company's] trials,*" with the "principle toxicities [being] mild to moderate." Wick also discussed the purpose and timing of the commencement of ASSIST-3. Buttita stated the Company was increasing spending to $90-$95 million for fiscal 2004 to "reflect[] [the Company's] enthusiasm about the potential for TELCYTA . . . and [the Company's] belief in [it] as [a] *near-term growth driver*[] for the company." Buttita also stated TELCYTA's "clinical activity" had been demonstrated in "refractory and resistant cancer[s]." Wick stated that the Phase III trials had been "designed . . . with all the bells and whistles" and that

- 21 -

they had "built in every opportunity to have success." *Wick also stated that the Company would*

*"communicate with Wall Street"* if any issues arose with the trials as they moved along.

52.    On 3/3/04, Wick presented at defendant Lehman's Global Healthcare Conference in

Miami Beach, Florida.  The event was later webcast from Telik's website.

53.    On 4/29/04, the Company issued a press release entitled "Telik Announces First

Quarter 2004 Financial Results," which stated in relevant part:

- The ASSIST-2 trial, a multi-national Phase 3 registration trial of TELCYTA in non-small cell lung cancer (NSCLC), was initiated as planned. The trial is expected to enroll approximately 520 patients who are being randomized to TELCYTA treatment or to a control group receiving Iressa®, the approved third-line treatment for NSCLC.

- A Phase 1-2a clinical trial was initiated to evaluate the combination of TELCYTA and cisplatin in NSCLC patients who have not previously received chemotherapy.

- At the American Association of Cancer Research (AACR) 94th annual meeting, preclinical data were presented demonstrating that TELCYTA demonstrated synergy, or enhanced inhibition of cancer cell growth, in combination with a number of chemotherapeutic drugs, including platinums, taxanes, anthracyclines and EGFR targeted drugs.

- Also at the AACR meeting, data were reported showing that, in preclinical models, TELCYTA is non-cross resistant with taxanes, and that TELCYTA is capable of re-sensitizing cancer cells to taxanes after resistance is established.

54.    During the earnings conference following the release Wick again stated that "[a]cross

the[] trials, TELCYTA ha[d] *demonstrated significant anti-tumor activity, continued outstanding*

*tolerability*, and a favorable impact on survival, compared to expected, in those very advanced

patients." Wick also assured investors that the *"very strong data"* received thus far in the clinical

trials would permit "the attendant acceleration of market opportunity *and revenue*." Butitta stated

the Company predicted filing an NDA for TELCYTA with the FDA in the "second half of '05."

Wick stated that because the trials were "*state-of-the-art*" with all the "*bells and whistles*," including

- 22 -

"*interim looks*" and "*independent data safety monitoring boards*," defendants would be able to "communicate with the street if any of those interim looks change in a material way or [the Company's] guidance for that trial, *either in terms of size*, of timing, or [expected] finish" changed, and that "*so far, none of those ha[d] occurred*."

55.    On 5/4/04, Telik officers presented at defendant Fortis's Annual Biotechnology Conference in London, on 6/8/04 at the Goldman Sachs 25th Annual Healthcare Conference, on 6/10/04 at the Pacific Growth Equities Life Sciences Conference in San Francisco, on 6/15/04 at the Thomas Weisel Partners Growth Forum 6.0 in Laguna Niguel, California, and on 6/17/04 at defendant Needham's Annual Biotechnology Conference in NYC. The events were later webcast from Telik's website.

56.    On 8/5/04, the Company issued a press release entitled "Telik Announces Second Quarter 2004 Financial Results," which stated in relevant part:

> **American Society of Clinical Oncology (ASCO) Annual Meeting:** At the ASCO meeting in June, Telik reported positive results from three Phase 2 trials of TELCYTA used in combination with standard chemotherapy: TELCYTA plus carboplatin in platinum refractory or resistant ovarian cancer; TELCYTA plus liposomal doxorubicin in platinum refractory or resistant ovarian cancer; and TELCYTA plus docetaxel in platinum resistant NSCLC.
>
> **Phase 2 TELCYTA trial in front-line NSCLC:** Telik announced the initiation of a Phase 2 trial to evaluate TELCYTA in combination with carboplatin and paclitaxel in the front-line treatment of Stage IIIb or IV NSCLC. The trial is being conducted at teaching affiliates of the Harvard Medical School including the Dana-Farber Cancer Institute, Massachusetts General Hospital and Beth Israel Deaconess Medical Center. Thomas Lynch, M.D., Medical Director, Center for Thoracic Cancers, Massachusetts General Hospital and Associate Professor of Medicine, Harvard Medical School, is Principal Investigator of the study.

57.    On 9/8/04, Telik officers presented at the Thomas Weisel Healthcare Tailwinds 2004 Conference in Boston, on 9/14/04 at defendant Bear Stearns' Healthcare Conference in NYC, and on 9/28/04 at defendant UBS's Global Life Sciences Conference in NYC. The events were later webcast from Telik's website.

- 23 -

58.    On 11/4/04, the Company issued a press release entitled "Telik Announces Third Quarter 2004 Financial Results," which stated in relevant part:

**10th Biennial International Gynecologic Cancer Society (IGCS) Meeting:** Telik reported data from two positive Phase 2 clinical trials of TELCYTA administered in combination with standard chemotherapy in platinum refractory or resistant ovarian cancer. The results included:

- **TELCYTA plus carboplatin in platinum refractory or resistant ovarian cancer:** a total of 53 patients have been enrolled in the trial, 27 of whom were evaluable for efficacy at the time of analysis. The objective response rate by RECIST is 54%, including 4 durable complete responses and 10 partial responses that have been independently reviewed. Objective responses were observed at all participating institutions including the Massachusetts General Hospital, Dana-Farber Cancer Institute and University of Texas M.D. Anderson Cancer Center. Based on these data, Telik plans to initiate the ASSIST-3 Phase 3 trial, to evaluate the combination of TELCYTA plus carboplatin versus Doxil in the second line treatment of platinum refractory or resistant ovarian cancer.

- **TELCYTA plus Doxil in platinum refractory or resistant ovarian cancer:** a total of 51 patients have been enrolled in the trial, including 12 treated in a separate dose-escalation phase. At the time of analysis, 19 patients in Phase 2 were evaluable for efficacy. The objective response rate by RECIST is 42%, with eight partial responses that have been independently reviewed.

59.    On 11/17/04, Telik officers presented at CSFB's Healthcare Conference in Phoenix, Arizona, and on 11/30/04 at defendant Lazard's First Annual Life Sciences Conference in NYC. The events were later webcast from Telik's website.

60.    On 12/29/04, the Company announced that enrollment in ASSIST-1 was complete and that enrollment in ASSIST-3 was commencing.

61.    On 1/10/05, Telik officers presented at defendant JP Morgan's Healthcare Conference in San Francisco. The events were later webcast from Telik's website.

62.    On 1/24/05, defendants announced Telik planned to conduct an underwritten offering of five million shares of its stock which was priced on 1/28/05 at $18.75 per share when the Company's Registration Statement was declared effective. The underwriters in the 2005 Offering

included defendants UBS, JP Morgan and Lehman. With the underwriters overalottment of shares, over eight million shares were ultimately issued and sold by Telik in the 2005 Offering for gross proceeds of $150.9 million. Because the 2005 Offering was also a "shelf registration," Telik's filings with the SEC after the Prospectus was declared effective would automatically be "incorporated by reference" as were the Company's annual report on Form 10-K for the year ended 12/31/03, filed with the SEC on 3/5/04. The Prospectus filed in connection with the 2005 Offering also contained the following false and misleading statements:

(a)    that "[w]hen TELCYTA binds to GST P1-1 inside a cancer cell, a chemical reaction occurs, releasing fragments of TELCYTA *that cause programmed cancer cell death*, or apoptosis";

(b)    that TELCYTA had "shown clinical antitumor activity alone and in combination in multiple Phase 2 clinical trials in refractory or resistant ovarian, non-small cell lung, breast and colorectal cancer";

(c)    that "[r]esults from these clinical trials indicate that TELCYTA is generally well-tolerated, with mostly mild to moderate side effects"; and

(d)    that the Company's "strategy" was to "develop product candidates with a clear path to regulatory approval and the potential to show *early evidence of clinical efficacy*," allowing Telik to "reduce the risk inherent in drug discovery and accelerate the commercialization of [its] drug candidates."

63.    On 2/24/05, the Company issued a press release entitled "Telik Announces Fourth Quarter and 2004 Year End Financial Results," which stated in relevant part:

At December 31, 2004, Telik had $138.6 million in cash, cash equivalents and investments including restricted investments, compared to $201.1 million at December 31, 2003. In February 2005, the company completed a follow-on public

offering of 8,050,000 shares of its common stock, resulting in gross proceeds to the company of $150,937,500.

Highlights during 2004 included:

- Enrollment was completed in the ASSIST-1 Phase 3 clinical trial of TELCYTA for third-line platinum refractory or resistant ovarian cancer.

- The ASSIST-2 Phase 3 clinical trial of TELCYTA was initiated for third-line platinum resistant non-small cell lung cancer.

- A third Phase 3 clinical trial, ASSIST-3, was initiated using the combination of TELCYTA plus carboplatin for second-line platinum refractory or resistant ovarian cancer.

- Positive results from three Phase 2 clinical trials for TELCYTA in combination with standard chemotherapy in ovarian and non-small cell lung cancer were reported at the American Society of Clinical Oncology annual meeting. Additional positive data from the ovarian cancer trials were reported at the International Gynecologic Cancer Society meeting.

- Two additional Phase 2 clinical trials were initiated for TELCYTA, in the treatment of advanced non-small cell lung cancer patients who have not previously received chemotherapy. One of the trials is in combination with cisplatin, and the other is in combination with carboplatin and paclitaxel.

- Preclinical results that support the advancement of TELCYTA clinical development to front-line and second-line treatment settings were reported at the American Association for Cancer Research annual meeting.

64.    On 3/30/05, Telik officers presented at the defendant Lehman's Global Healthcare Conference in Miami Beach, Florida. The events were later webcast from Telik's website.

65.    On 5/5/05, the Company issued a press release entitled "Telik Announces Financial Results for 2005 First Quarter," which stated in relevant part:

Recent highlights include TELCYTA preclinical presentations at the 96th annual meeting of the American Association for Cancer Research:

- Telik scientists reported that the combination of TELCYTA and carboplatin showed synergistic inhibition of cancer cell proliferation *in vitro* in both platinum resistant and platinum sensitive human ovarian cancer cells. These studies support the ongoing Phase 3 ASSIST-3 registration trial, in which the combination of TELCYTA and carboplatin is being evaluated in platinum refractory or resistant ovarian cancer in the second line setting.

- 26 -

- Studies were presented that describe the synergistic effects of doublet and triplet combinations of TELCYTA with platinum and taxane drugs as compared to the individual agents in human ovarian and non-small cell lung cancer cells. These data provide support for the two ongoing Phase 2 TELCYTA trials in the first line treatment of advanced non-small cell lung cancer. One trial is evaluating the combination of TELCYTA, carboplatin and paclitaxel. The second trial is evaluating the combination of TELCYTA and cisplatin. Preliminary data from the Phase 2 trials will be reported at the annual meeting of the American Society of Clinical Oncology (ASCO) later this month.

- A third report provided details on the TELCYTA-induced effects on cell cycle progression and apoptosis, or programmed cell death, consistent with its novel mechanism of targeted activation.

In addition, Telik announced a collaboration with Stuart Aaronson, M.D., Professor and Chair, Oncological Sciences and Professor of Medicine at the Mount Sinai School of Medicine, and colleagues, to utilize Telik's proprietary TRAP drug discovery technology to discover and evaluate novel, pharmaceutically active small molecules for new cancer targets. This is one in a series of TRAP collaborations Telik has entered into with leading cancer research institutions to add to its pipeline of cancer drug candidates while expanding utilization of its TRAP technology.

66.    On 8/4/05, the Company issued a press release entitled "Telik Announces Second Quarter 2005 Financial Results." During the conference call following the 8/4/05 release, defendants specifically ducked dosage/safety question:

> [JIM BIRCHENOUGH]: . . . Okay, and then just one the recent combination data, have you yet seen any of those dose-limiting toxicities with the combination with taxol and carbo that you hadn't seen at ASCO and what are your thoughts with regards to the toxicity profile you've seen through Barcelona.

> [MICHAEL WICK]: You are at ASCO when you saw the presentation there actually in the dose 1 and the Phase 1 presentation, actually much like the Phase 2 that we presented with taxol and carbo. We went the full monodose therapy of TELCYTA, if you recall we saw the CR at 400 milligrams meters, so we continued to treat now substantially more patients were quite pleased with the safety profile. *We are going to explore several doses and we will comment on that at the appropriate time.*

67.    On 2/9/06, the Company issued a press release entitled "Telik Announces Fourth Quarter and 2005 Year End Financial Results and 2006 Financial Guidance," which stated in relevant part:

2005 highlights included:

- The advancement of our lead product candidate, TELCYTA®, in three randomized Phase 3 registration trials and in two Phase 2 trials in first-line non-small cell lung cancer:

  - The ASSIST-1 Phase 3 trial completed enrollment of 440 women with platinum refractory or resistant ovarian cancer in the third-line setting.  The primary endpoint for ASSIST-1 is improvement in survival.

  - A peer-reviewed publication describing the Phase 2 TELCYTA trial supporting the ASSIST-1 trial was published in the *International Journal of Gynecological Cancer.*

  - The ASSIST-3 trial was initiated to evaluate the combination of TELCYTA plus carboplatin in second-line platinum refractory or resistant ovarian cancer. This trial is enrolling 244 women. The primary endpoint for ASSIST-3 is objective response rate as well as progression-free survival.

  - The ASSIST-2 trial completed enrollment of 520 patients with platinum resistant non-small cell lung cancer in the third-line treatment setting.  Improvement in survival is the primary endpoint of the ASSIST-2 trial.

  - Positive interim data from the multicenter Phase 2 trial of TELCYTA administered in combination with the standard regimen of carboplatin and paclitaxel in first-line non-small cell lung cancer were reported at the 11th World Conference on Lung Cancer in July.  This trial has been expanded to multiple sites and is intended to enroll approximately 100 patients.

  - Positive interim data from the multicenter Phase 2 trial of TELCYTA administered in combination with cisplatin, also in first-line non-small cell lung cancer, were reported at the 41st annual meeting of the American Society of Clinical Oncology and at the 11th World Conference on Lung Cancer.

- Preclinical data demonstrating the ability of TELCYTA to resensitize platinum-resistant human ovarian cancer cells to platinum were reported at the American Association for Cancer Research 96th annual meeting. These data provided scientific rationale for the ASSIST-3 trial design.

- Preclinical data describing the synergistic inhibitory effects of both doublet and triplet combinations of TELCYTA with platinum and taxane drugs as compared to the individual agents in human ovarian and non small cell lung cancer cells were presented at the American Association of Cancer Research

96th annual meeting. These data provided scientific support for the Phase 2 first-line non-small cell lung cancer trials.

68.    On 5/4/06, the Company issued a press release entitled "Telik Announces Financial Results for 2006 First Quarter," which stated in relevant part:

- Completion of ASSIST-3 enrollment: Telik announced the completion of planned enrollment for the ASSIST-3 trial, a Phase 3 trial evaluating the combination of TELCYTA plus carboplatin to treatment with Doxil in women with platinum refractory or resistant ovarian cancer.

- TELCYTA presentation at the 97th annual meeting of the American Association for Cancer Research: Telik reported positive preclinical results with its lead cancer product candidate, TELCYTA (TLK286), that support TELCYTA's unique mechanism of targeted activation in cancer cells and the synergy observed when TELCYTA is administered in combination with platinum-based chemotherapeutic drugs.

69.    On 8/3/06, the Company issued a press release entitled "Telik Announces Quarterly Financial Release, Conference Call and Webcast," which stated in relevant part:

- Completion of patient enrollment in the ASSIST-3 Phase 3 clinical trial, which will compare treatment with the combination of TELCYTA and carboplatin to treatment with liposomal doxorubicin, also in the second line setting in women with platinum refractory or resistant ovarian cancer.

70.    On 9/25/06, the Company announced that the "pre-specified number of events ha[d] been reached on the ASSIST-1 Phase 3 trial in platinum refractory or resistant ovarian cancer."

71.    On 12/26/06, Telik issued a release entitled "Telik Reports Preliminary Results on ASSIST-1, ASSIST-2 and ASSIST-3 Phase 3 Clinical Trials," which disclosed the failure of all three arms of the TELCYTA clinical trials. The release stated in relevant part:

**Non-Small Cell Lung Cancer**

**ASSIST-2 Trial**

The ASSIST-2 trial, a 520 patient multinational, randomized study designed to evaluate TELCYTA as compared to gefitinib in the third-line therapy of advanced non-small cell lung cancer, *did not achieve a statistically significant improvement in overall survival, the primary endpoint*.

- 29 -

### Platinum Refractory or Resistant Ovarian Cancer

#### ASSIST-1 Trial

The ASSIST-1 trial, a 440 patient multinational, randomized study designed to evaluate TELCYTA as compared to the active control agents liposomal doxorubicin or topotecan in the third-line therapy of platinum resistant ovarian cancer, *did not achieve its primary endpoint of demonstrating a statistically significant improvement in overall survival for TELCYTA as compared to the active controls*. While *the preliminary analysis revealed a number of internal inconsistencies that need to be further investigated*, resolution of these inconsistencies may not change the preliminary results.

#### ASSIST-3 Trial

The ASSIST-3 trial, a 244 patient randomized trial conducted in the U.S., was designed to demonstrate a statistically significant improvement in overall tumor response to the combination of TELCYTA plus carboplatin compared to liposomal doxorubicin in the second-line treatment of platinum resistant ovarian cancer. Under the trial protocol, patients were to have received treatment until tumor progression or unacceptable toxicity. However, a major discordance was observed between the clinical review of the tumor scans and the independent radiology review. *Approximately 25% of the patients were discontinued prematurely from the assigned study treatment as judged by the independent review of the scans. Therefore, the company believes the trial was compromised and may not be suitable for a regulatory submission*. The company plans to meet with advisors to review the results and also to determine if any changes should be made to the protocol and/or trial conduct procedures for the ongoing ASSIST-5 trial.

72.     Thereafter, on 4/17/07, the Company issued a release entitled "Telik Reports Positive Data Demonstrating Synergy in Combination and Highly Statistically Significant Effect of TELCYTA as Maintenance Therapy in First-Line Non-Small Cell Lung Cancer." The release stated in relevant part:

> Telik, Inc. announced the presentation today of results from a Phase 2 clinical trial of the triplet combination of TELCYTA® (canfosfamide HCl, TLK286), carboplatin and paclitaxel in the first-line treatment of advanced non-small cell lung cancer. *The results include highly statistically and clinically significant improvement in both progression-free survival and overall survival in responding patients who received TELCYTA maintenance therapy as compared with those who did not receive TELCYTA maintenance therapy*. The data were presented at the 98th annual meeting of the American Association for Cancer Research (AACR) in Los Angeles.

*    *    *

*The triplet combination was generally well-tolerated at all TELCYTA doses evaluated, with toxicities similar to those expected with each drug alone. There were no new, unexpected or cumulative toxicities. TELCYTA maintenance therapy was, as expected, well-tolerated, with Grade 1 or 2 toxicities observed in fewer than 5% of patients.*

*"Many approaches to maintenance therapy following first-line treatment for advanced non-small cell lung and ovarian cancer have been evaluated, with most adding little to efficacy while exposing patients to ongoing risks from toxic chemotherapy," said Gail L. Brown, M.D., senior vice president and chief medical officer. "The safety profile and clinical activity of TELCYTA, both in combination with carboplatin and paclitaxel and as monotherapy, suggest a potential role for this investigational agent as part of first-line combination treatment and as single agent maintenance therapy of non-small cell lung cancer. We will review these results with our expert advisors to discuss plans to expeditiously advance the TELCYTA program toward registration."*

73.    On 5/3/07, the Company issued a release entitled "Telik Announces First Quarter 2007 Financial Results." The release stated in relevant part:

Telik also reviewed data presented at the recent American Association for Cancer Research (AACR) 98th annual meeting:

- Positive data were reported from a multicenter Phase 2 trial of TELCYTA in combination with carboplatin and paclitaxel in the first-line treatment of advanced non-small cell lung cancer. One-hundred twenty-nine patients were enrolled for a planned four to six cycles of triplet combination therapy, followed by optional TELCYTA maintenance therapy for those patients with ongoing clinical benefit (objective response or stable disease) at the completion of combination therapy. In the intent-to-treat population, the objective response rate was 34.1% and the overall disease stabilization rate was 77.5%. The median progression-free survival was 4.9 months and median survival was 9.6 months.

- Of the 100 patients (77.5%) with objective response or stable disease, 50 patients received TELCYTA maintenance therapy and 50 patients did not receive TELCYTA maintenance therapy. The two groups were well-balanced for patient demographics, key non-small cell lung cancer disease characteristics and prognostic factors, except for ECOG performance status, which favored the non-maintenance group. Median progression-free survival in the patients receiving TELCYTA maintenance therapy was 6.9 months, compared with 4.2 months in those not receiving TELCYTA maintenance therapy (p<0.0001, HR 0.36). Median survival in the TELCYTA maintenance group was 14.2 months compared with 8.4 months in those not receiving TELCYTA maintenance therapy (p=0.0003, HR 0.40). Outcomes

- 31 -

were similar whether the patients had objective tumor response or stable disease.

- A series of preclinical studies focused on the cellular and molecular correlates of synergistic cancer cell growth inhibition by TELCYTA, carboplatin and paclitaxel alone and in different combinations in human lung cancer cells. *These studies support the Phase 2 trial of TELCYTA in combination with carboplatin and paclitaxel reported at the AACR meeting*.

- A separate series of preclinical studies evaluated the anti-angiogenic effects of TELCYTA with and without bevacizumab, demonstrating that TELCYTA can potentially be a potent inhibitor of human endothelial cell proliferation. Further, the combination of TELCYTA and bevacizumab produced significantly enhanced inhibition of endothelial cell proliferation and capillary tubule formation. *These studies suggest the potential for TELCYTA use in combination with bevacizumab and other anti-angiogenic agents*.

74.     On 6/3/07, at the annual ASCO meeting, the Company finally released the data underlying the results of its ASSIST-1, 2 and 3 clinical trials for TELCYTA, which had been disclosed in 12/06. While the Company had disclosed on 12/26/06 that one of the clinical trials – dubbed ASSIST-1 – had failed to show that TELCYTA could *improve* the overall survival of women with advanced ovarian cancer compared to currently approved drugs, defendants had continued concealing until the ASCO meeting – more than five months later – just how *badly* TELCYTA performed in the ASSIST-1 study. The women treated with TELCYTA *died more than five months faster on the drug than off of it*. The median survival time for women in the TELCYTA arm of ASSIST-1 was 8.5 months. The women in the control arm of the study treated with the approved drugs doxorubicine or topetecan reported a median survival time of 13.6 months. This negative survival effect of TELCYTA was statistically significant by a wide margin, which means that, statistically speaking, it was TELCYTA and not random chance that caused these women to die faster.

75.     In a separate announcement on the evening of 6/3/07, Telik disclosed that a Phase III study of TELCYTA in non-small cell lung-cancer patients also resulted in a negative survival effect

of one and a half months. In this study – dubbed ASSIST-3 – TELCYTA patients reported a median survival time of 4.6 months compared to a median survival time of 6.1 months for patients in the control arm.

76.    Then, on the evening of 6/4/07, after the close of trading, the Company announced the FDA had ordered it to immediately cease all clinical trials of TELCYTA after data showed the drug hastened the deaths of women with advanced ovarian cancer.

77.    The result of these false and misleading statements was to artificially inflate of Telik's stock price during the Class Period. When, on 12/26/06, the Company was forced to reveal that TELCYTA had failed in all three arms of its final clinical testing – showing no efficacy in two of the three arms and impermissibly dirty clinical data in two of the three arms – the Company's stock plunged 70% in a single trading session – falling from over $16 per share to below $5 per share on more than 33 times the previous 30 days' average daily trading volume and erasing more than $600 million in market value. The Company's stock price declined another 20% on 6/3/07, when it disclosed that the ovarian cancer arm of the TELCYTA trials failed – with Telik again disclosing that the results had been compromised and subjects were improperly released early, tainting the data. Following the Company's after hours announcement on the evening of 6/4/07, that the FDA had ordered them to halt the clinical trials of TELCYTA, the Company's stock price fell nearly 30% when the stock began trading the morning of 6/5/07.

78.    The true facts, which were known by each of the defendants but concealed from the investing public during the Class Period, were as follows:

(a)    The final-stage clinical trials of TELCYTA were not being conducted pursuant to the FDA's rigorous "adequate and well-controlled" clinical trial standards, rendering the data being obtained meaningless;

(b)     Subjects in the TELCYTA clinical trials were experiencing higher mortality rates than those not using TELCYTA;

(c)     Defendants had reason to believe the Company's TELCYTA NDA would be rejected; and

(d)     Defendants knew TELCYTA was not a commercially viable drug candidate.

79.     As a result of defendants' false and misleading Class Period statements and omissions, Telik's stock traded at inflated levels during the Class Period, trading as high as $29.04 per share by 4/04, whereby the Company sold over $322 million worth of Telik securities in two underwritten public stock offerings.

## COUNT I

### For Violation of Section 11 of the Securities Act
### Against All Defendants

80.     Plaintiff incorporates ¶¶1-22 and 25-79 by reference herein. This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, and is asserted against all defendants. For purposes of this Count, plaintiff does not claim that defendants committed intentional or reckless misconduct or that defendants acted with scienter or fraudulent intent.

81.     The Registration Statement for the 2005 Offering was inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading and omitted to state material facts required to be stated therein.

82.     Defendant Telik is the issuer of the common stock purchased by plaintiff and the Class. As such, Telik is strictly liable for the materially inaccurate statements contained in the Registration Statement and the Prospectus and the failure of the Registration Statement and Prospectus to be complete and accurate.

- 34 -

83.    The Individual Defendants each signed the Registration Statement either personally or through an Attorney-in-Fact and/or caused their issuance. The Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement. They had a duty to ensure that such statements were true and accurate, that there were no omissions of material facts that would make the statements misleading and that the documents contained all facts required to be stated therein. In the exercise of reasonable care, the Individual Defendants should have known of the material misstatements and omissions contained in the Registration Statement and also should have known of the omissions of material fact necessary to make the statements made therein not misleading. As such, the Individual Defendants are liable to the plaintiff and the Class.

84.    The Underwriter Defendants served as an underwriters, as that term is used in §11(a)(5) of the Securities Act, with respect to the 2005 Offering and the common stock sold through the Registration Statement. They were required to investigate with due diligence the representations contained therein to confirm that they did not contain materially misleading statements or omit material facts. The Underwriter Defendants did not make a reasonable investigation or did not possess reasonable grounds for their belief that the statements described herein, which were contained in the Registration Statement and Prospectus, were true, were without omission of any material facts, and/or were not misleading.

85.    By reasons of the conduct herein alleged, each defendant violated §11 of the Securities Act.

86.    Plaintiff acquired Telik common stock in reliance on the Registration Statement and without knowledge of the untruths and/or omissions alleged herein. Plaintiff sustained damages

when the price of Telik common stock declined substantially due to material misstatements in the Registration Statement and Prospectus.

87.    This action was brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the 2005 Offering.

### COUNT II

**For Violation of Section 12(a)(2) of the Securities Act
Against All Defendants**

88.    Plaintiff incorporates ¶¶1-22 and 25-87 by reference herein. This Count is brought by plaintiff pursuant to §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2), on behalf of all purchasers of Telik common stock in the 2005 Offering. For purposes of this Count, plaintiff affirmatively states that he does not claim that defendants committed intentional or reckless misconduct or that defendants acted with scienter or fraudulent intent.

89.    Defendants were sellers and offerors and/or solicitors of purchasers of the Telik common stock offered pursuant to the 2005 Offering Prospectus. Defendants issued, caused to be issued, and/or signed the Registration Statement in connection with the 2005 Offering. The Registration Statement contained a Prospectus, which was used to induce investors, such as the plaintiff and the other members of the Class, to purchase Telik common stock.

90.    The Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted material facts required to be stated therein. The Individual Defendants' actions of solicitation included participating in the preparation of the false and misleading Prospectus. The Underwriter Defendants solicited such purchases for their personal financial gain through the preparation and dissemination of the Prospectus.

91.    The Underwriter Defendants participated in the preparation and dissemination of the false and misleading Prospectus for their own financial benefit. But for their participation in the 2005 Offering, including its solicitation as set forth herein, the 2005 Offering could not and would not have been accomplished. Specifically, the Underwriter Defendants:

(a)    made the decision to conduct the 2005 Offering and do the offering at the price set forth in the offering documents. The Underwriter Defendants drafted, revised and/or approved the Prospectus. The Prospectus was calculated to create interest in Telik common stock and was widely distributed by or on behalf of these defendants for that purpose;

(b)    finalized the Prospectus and caused it to become effective; and

(c)    conceived and planned the 2005 Offering and orchestrated all activities necessary to effect the sale of these securities to the investing public, by issuing securities, promoting the securities and supervising their distribution and ultimate sale to the investing public.

92.    As set forth more specifically above, the Prospectus contained untrue statements of material fact and omitted to state material facts necessary in order to make the statements, in light of circumstances in which they were made, not misleading.

93.    Plaintiff and the other Class members did not know, nor could they have known, of the untruths or omissions contained in the Prospectus.

94.    The defendants named in this Count were obligated to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein not misleading. None of the defendants named in this Count made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the

Prospectus were accurate and complete in all material respects. Had they done so, these defendants could have known of the material misstatements and omissions alleged herein.

95.     This claim was brought within one year after discovery of the untrue statements and omissions in the Prospectus and within three years after Telik common stock was sold to the Class in connection with the 2005 Offering.

96.     By reason of the misconduct alleged herein, the defendants named in this Count violated §12(a)(2) of the Securities Act and are liable to plaintiff and Class members who purchased or acquired Telik common stock in the 2005 Offering pursuant to the Prospectus, each of whom has been damaged as a result of such violation.

## COUNT III

### For Violation of Section 15 of the Securities Act
### Against the Individual Defendants

97.     Plaintiff incorporates ¶¶1-22 and 25-96 by reference herein. This Count is asserted by plaintiff against all the Individual Defendants. For purposes of this Count, plaintiff affirmatively states that he does not claim that defendants committed intentional or reckless misconduct or that defendants acted with scienter or fraudulent intent.

98.     Throughout the Class Period, the Individual Defendants acted as controlling persons of Telik within the meaning of §15 of the Securities Act. By reason of their stock ownership, senior management positions and/or directorships at the Company, as alleged above, these defendants, individually and acting pursuant to a common plan, had the power to influence and exercised the same to cause Telik to engage in the conduct complained of herein. By reason of such conduct, the Individual Defendants are liable pursuant to §15 of the Securities Act.

## COUNT IV

### For Violation of Section 10(b) of the Exchange Act and Rule 10b-5
### Against All Defendants

99.    Plaintiff incorporates ¶¶1-79 by reference herein.

100.    During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

101.    Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)    employed devices, schemes and artifices to defraud;

(b)    made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Telik common stock during the Class Period.

102.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Telik common stock. Plaintiff and the Class would not have purchased Telik common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

103.    As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Telik common stock during the Class Period.

## COUNT V

### For Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants and Telik

104.    Plaintiff incorporates ¶¶1-79 and 99-103 by reference herein.

105.    The Individual Defendants acted as controlling persons of Telik within the meaning of §20(a) of the Exchange Act. By reason of their positions with the Company and their ownership of Telik common stock, the Individual Defendants had the power and authority to cause Telik to engage in the wrongful conduct complained of herein. Telik controlled the Individual Defendants and all of its employees. By reason of such conduct, the Individual Defendants and Telik are liable pursuant to §20(a) of the Exchange Act.

### CLASS ACTION ALLEGATIONS

106.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased Telik common stock during the Class Period (the "Class"). Excluded from the Class are defendants.

107.    The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Telik has more than 52 million shares of stock outstanding, owned by hundreds if not thousands of persons.

108.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    (a)    Whether the Securities Act was violated by defendants;

    (b)    Whether the Exchange Act was violated by defendants;

      (c)     Whether defendants' statements omitted and/or misrepresented material facts; and

      (d)     the extent of damage sustained by Class members and the appropriate measure of damages.

109.    Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

110.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

111.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.    Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23;

B.    Awarding plaintiff and the members of the Class damages, interest and costs;

C.    With respect to Count II, ordering rescission or recissory damages for purchasers of Telik common stock in the 2005 Offering;

D.    Awarding plaintiff reasonable costs and attorneys' fees; and

E.    Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

- 41 -

# JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  June 6, 2007

LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN (SR-7957)
DAVID A. ROSENFELD (DR-7564)


_____
            SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
MARY K. BLASY
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

LAW OFFICES OF MARC S. HENZEL
MARC S. HENZEL
273 Montgomery Avenue, Suite 202
Bala Cynwyd, PA  19004
Telephone:  610/660-8000
610/660-8080 (fax)

Attorneys for Plaintiff

S:\CptDraft\Securities\Cpt Telik.doc

# EXHIBIT C

# SCHEDULE OF TRANSACTIONS
# FOR THE MEHAN GROUP

TELIK Corporation Securities Litigation

| # of Shares | Purchased (P) / Sold (S) | Price Per Share | Trade Date of Purchase/Sale | (Cost)/ Proceeds |
|---|---|---|---|---|
| **Ramesh K. Mehan, General Partner, RML Limited** | | | | |
| 3000 | P | $16.38 | 12/15/06 | (49,140) |
| 13,000 | P | $16.44 | 12/15/06 | (213,720) |
| 10,000 | P | $4.39 | 12/29/06 | (43,900) |
| 1,400 | P | $4.39 | 12/29/06 | (6,146) |
| 6,400 | P | $4.40 | 12/29/06 | (28,160) |
| 2,200 | P | $4.39 | 12/29/06 | (9,658) |
| 100 | S | $5.85 | 03/02/07 | 585 |
| 399 | S | $5.85 | 03/02/07 | 2,334 |
| | | | | |
| **Ramesh K. Mehan, Grantor, The Ramesh K. Mehan Irrevocable Children's Trust** | | | | |
| | | | | |
| 4,000 | P | $16.92 | 11/27/06 | (67,680) |
| 6,000 | P | $4.76 | 12/26/06 | (28,560) |
| | | | | |
| **Ramesh K. Mehan, Trustee, Joel K. Mehan Irrevocable Trust** | | | | |
| 5,000 | P | $4.39 | 12/29/06 | (21,950) |
| | | | | |
| **Ramesh K. Mehan, Trustee, Sheila G. Mehan Irrevocable Trust** | | | | |
| | | | | |
| 1,000 | P | $16.96 | 12/01/06 | (16,960) |
| 1,000 | P | $4.76 | 12/26/06 | (4,760) |
| 1,180 | P | $4.40 | 12/29/06 | (5,192) |
| 399 | P | $4.39 | 12/29/06 | (1,752) |
| 221 | P | $4.40 | 12/29/06 | (972) |
| 200 | P | $4.39 | 12/29/06 | (878) |
| | | | | |
| **Ramesh K. Mehan, with Power of Attorney for Renee Mehan Family Trust** | | | | |
| 5,758 | P | $16.90 | 11/27/06 | (97,310) |
| 500 | P | $16.86 | 11/27/06 | (8,430) |
| 100 | P | $16.88 | 11/27/06 | (1,688) |
| 500 | P | $16.89 | 11/27/06 | (8,445) |
| 700 | P | $16.88 | 11/27/06 | (11,816) |
| 742 | P | $16.87 | 11/27/06 | (12,518) |
| 500 | P | $16.85 | 11/27/06 | (8,425) |
| 1,200 | P | $16.86 | 11/27/06 | (20,232) |
| 5,000 | P | $16.81 | 12/14/06 | (84,425) |
| 15,000 | P | $4.76 | 12/26/06 | (71,400) |
| 8,673 | P | $4.39 | 12/29/06 | (38,074) |
| 200 | P | $4.38 | 12/29/06 | (876) |
| 3,676 | P | $4.39 | 12/29/06 | (16,138) |

| | | | | |
|---|---|---|---|---|
| 4,500 | P | $4.38 | 12/29/06 | (19,710) |
| 151 | P | $4.39 | 12/29/06 | (663) |
| 1,000 | P | $4.39 | 12/29/06 | (4,390) |
| 100 | P | $4.38 | 12/29/06 | (438) |
| 1,800 | P | $4.38 | 12/29/06 | (7,884) |
| | | | | |
| **Ramesh K. Mehan, Trustee, Neal D. Mehan Irrevocable Trust** | | | | |
| 5,000 | P | $4.38 | 12/29/06 | (21,900) |
| | | | | |
| **Ramesh K. Mehan, with Power of Attorney for Rahul D. Mehan** | | | | |
| 1,000 | P | $16.28 | 12/21/06 | (16,280) |
| | | | | |
| **Ramesh K. Mehan, Trustee, Ramesh K. Mehan Family Trust** | | | | |
| 3,277 | P | $16.38 | 12/14/06 | (53677.26) |
| 200 | P | $16.37 | 12/14/06 | (3274) |
| 600 | P | $16.36 | 12/14/06 | (9816) |
| 100 | P | $16.35 | 12/14/06 | (1635) |
| 200 | P | $16.35 | 12/14/06 | (3270) |
| 100 | P | $16.34 | 12/14/06 | (1634) |
| 200 | P | $16.36 | 12/14/06 | (3272) |
| 500 | P | $16.34 | 12/14/06 | (8170) |
| 100 | P | $16.36 | 12/14/06 | (1636) |
| 300 | P | $16.35 | 12/14/06 | (4905) |
| 1,123 | P | $16.34 | 12/14/06 | (18349.82) |
| 700 | P | $16.35 | 12/14/06 | (11445) |
| 23 | P | $16.34 | 12/14/06 | (375.82) |
| 100 | P | $16.35 | 12/14/06 | (1635) |
| 100 | P | $16.34 | 12/14/06 | (1634) |
| 200 | P | $16.36 | 12/14/06 | (3272) |
| 100 | P | $16.35 | 12/14/06 | (1635) |
| 400 | P | $16.36 | 12/14/06 | (6544) |
| 1,277 | P | $16.34 | 12/14/06 | (20866.18) |
| 100 | P | $16.35 | 12/14/06 | (1635) |
| 23 | P | $16.34 | 12/14/06 | (375.82) |
| 277 | P | $16.35 | 12/14/06 | (4528.95) |
| 5,000 | P | $16.63 | 12/14/06 | (83150) |
| 8,099 | P | $4.77 | 12/26/06 | (38632) |
| 6,901 | P | $4.76 | 12/26/06 | (32849) |
| 400 | P | $4.38 | 12/29/06 | (1752) |
| 200 | P | $4.37 | 12/29/06 | (874) |
| 6,211 | P | $4.39 | 12/29/06 | (27266) |
| 3,755 | P | $4.38 | 12/29/06 | (16447) |
| 9,434 | P | $4.37 | 12/29/06 | (41227) |
| | | | | |
| 160,601 (Shares held at end of class period) | | | Total Cost (less proceeds) | ($1,352,938) |

| 160,601 | | $3.34 (average price of TELK shares between 6/5/07 and 8/3/07, inclusive) | Value of 160,601 shares held at the end of class period based on average price of TELK shares between 6/5/07 and 8/3/07, inclusive | $549,255 |
|---|---|---|---|---|
| | | | | Total Net Loss |
| | | | | $(816,530.66) |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

# EXHIBIT D

## PLAINTIFF'S CERTIFICATION

Rahul D. Mehan ("Plaintiff") declares under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1.     Plaintiff has reviewed the complaint and authorized its filing.

2.     Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary, and Plaintiff is willing to serve as a lead plaintiff either individually or as part of a group, a lead plaintiff being a representative party who acts on behalf of other class members in directing the action.

4.     Plaintiff's transactions in Telik, Inc. securities during the Class Period are as follows:

| # of Shares | Purchased (P) / Sold (S) | Price Per Share | Date of Purchase/Sale |
|---|---|---|---|
| 1,000 | P | $16.28 | 12/21/06 |

5.     During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class under the federal securities laws.

6.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.  Plaintiff understands that this is not a claim form, and that Plaintiff's ability to share in any recovery as a member of the class is unaffected by Plaintiff's decision to serve as a representative party.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 𝓍𝓍ᵗʰ day of July 2007.

_____
Ramesh K. Mehan, with Power of Attorney

## PLAINTIFF'S CERTIFICATION

RML Limited ("Plaintiff") declares under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the complaint and authorized its filing.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary, and Plaintiff is willing to serve as a lead plaintiff either individually or as part of a group, a lead plaintiff being a representative party who acts on behalf of other class members in directing the action.

4.    Plaintiff's transactions in Telik, Inc. securities during the Class Period are attached hereto.

5.    During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class under the federal securities laws.

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.  Plaintiff understands that this is not a claim form, and that Plaintiff's ability to share in any recovery as a member of the class is unaffected by Plaintiff's decision to serve as a representative party.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this _2 6_ day of July 2007.

_____
Ramesh K. Mehan, General Partner

**ATTACHMENT TO CERTIFICATION**

Telik, Inc. Securities Litigation

Name:  RML Limited

| # of Shares | Purchased (P) / Sold (S) | Price Per Share | Date of Purchase/Sale |
|---|---|---|---|
| 3,000 | P | $16.38 | 12/15/06 |
| 13,000 | P | $16.44 | 12/15/06 |
| 10,000 | P | $4.39 | 12/29/06 |
| 1,400 | P | $4.39 | 12/29/06 |
| 6,400 | P | $4.40 | 12/29/06 |
| 2,200 | P | $4.39 | 12/29/06 |
| 100 | S | $5.85 | 03/02/07 |
| 399 | S | $5.85 | 03/02/07 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## PLAINTIFF'S CERTIFICATION

The Ramesh K Mehan Irrevocable Children's Trust ("Plaintiff") declares under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the complaint and authorized its filing.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary, and Plaintiff is willing to serve as a lead plaintiff either individually or as part of a group, a lead plaintiff being a representative party who acts on behalf of other class members in directing the action.

4.    Plaintiff's transactions in Telik, Inc. securities during the Class Period are as follows:

| # of Shares | Purchased (P) / Sold (S) | Price Per Share | Date of Purchase/Sale |
|---|---|---|---|
| 4,000 | P | $16.92 | 11/27/06 |
| 6,000 | P | $4.76 | 12/26/06 |

5.    During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class under the federal securities laws.

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.  Plaintiff understands that this is not a claim form, and that Plaintiff's ability to share in any recovery as a member of the class is unaffected by Plaintiff's decision to serve as a representative party.

I declare under penalty of perjury that the foregoing is true and correct. Executed this *26th* day of July 2007.

_Ramesh K. Mehan, Grantor_

## PLAINTIFF'S CERTIFICATION

Joel K Mehan Irrevocable Trust ("Plaintiff") declares under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the complaint and authorized its filing.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary, and Plaintiff is willing to serve as a lead plaintiff either individually or as part of a group, a lead plaintiff being a representative party who acts on behalf of other class members in directing the action.

4.    Plaintiff's transactions(transferred from Joel K mehan's uniform gift to minor Charles Schwab account) in Telik, Inc. securities during the Class Period are as follows:

| # of Shares | Purchased (P) / Sold (S) | Price Per Share | Date of Purchase/Sale |
|---|---|---|---|
| 5,000 | P | $4.39 | 12/29/06 |

5.    During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class under the federal securities laws.

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.  Plaintiff understands that this is not a claim form, and that Plaintiff's ability to share in any recovery as a member of the class is unaffected by Plaintiff's decision to serve as a representative party.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this _26_ day of July 2007.

_____
Ramesh K. Mehan, Trustee

## PLAINTIFF'S CERTIFICATION

Sheila G. Mehan Irrevocable Trust ("Plaintiff") declares under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the complaint and authorized its filing.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary, and Plaintiff is willing to serve as a lead plaintiff either individually or as part of a group, a lead plaintiff being a representative party who acts on behalf of other class members in directing the action.

4.    Plaintiff's transactions in Telik, Inc. securities during the Class Period are attached hereto.

5.    During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class under the federal securities laws.

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.  Plaintiff understands that this is not a claim form, and that Plaintiff's ability to share in any recovery as a member of the class is unaffected by Plaintiff's decision to serve as a representative party.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 2ᵗ ᴸ day of July 2007.

_____
Ramesh K. Mehan, Trustee

## ATTACHMENT TO CERTIFICATION

Telik, Inc. Securities Litigation

Name:  Sheila G. Mehan Irrevocable Trust

| # of Shares | Purchased (P) / Sold (S) | Price Per Share | Date of Purchase/Sale |
|---|---|---|---|
| 1,000 | P | $16.96 | 12/01/06 |
| 1,000 | P | $4.76 | 12/26/06 |
| 1,180 | P | $4.40 | 12/29/06 |
| 399 | P | $4.39 | 12/29/06 |
| 221 | P | $4.40 | 12/29/06 |
| 200 | P | $4.39 | 12/29/06 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## PLAINTIFF'S CERTIFICATION

Renee Mehan Family Trust ("Plaintiff") declares under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the complaint and authorized its filing.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary, and Plaintiff is willing to serve as a lead plaintiff either individually or as part of a group, a lead plaintiff being a representative party who acts on behalf of other class members in directing the action.

4.    Plaintiff's transactions in Telik, Inc. securities during the Class Period are attached hereto.

5.    During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class under the federal securities laws.

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court. Plaintiff understands that this is not a claim form, and that Plaintiff's ability to share in any recovery as a member of the class is unaffected by Plaintiff's decision to serve as a representative party.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _ɪɪ ʀ_ day of July 2007.

_R a ʌʌ ʌ_

_____
Ramesh K. Mehan, with Power of Attorney

### ATTACHMENT TO CERTIFICATION

Telik, Inc. Securities Litigation

Name:  Renee Mehan

| # of Shares | Purchased (P) / Sold (S) | Price Per Share | Date of Purchase/Sale |
|---|---|---|---|
| 5,758 | P | $16.90 | 11/27/06 |
| 500 | P | $16.86 | 11/27/06 |
| 100 | P | $16.88 | 11/27/06 |
| 500 | P | $16.89 | 11/27/06 |
| 700 | P | $16.88 | 11/27/06 |
| 742 | P | $16.87 | 11/27/06 |
| 500 | P | $16.85 | 11/27/06 |
| 1,200 | P | $16.86 | 11/27/06 |
| 5,000 | P | $16.81 | 12/14/06 |
| 15,000 | P | $4.76 | 12/26/06 |
| 8,673 | P | $4.39 | 12/29/06 |
| 200 | P | $4.38 | 12/29/06 |
| 3,576 | P | $4.39 | 12/29/06 |
| 4,500 | P | $4.38 | 12/29/06 |
| 151 | P | $4.39 | 12/29/06 |
| 1,000 | P | $4.39 | 12/29/06 |
| 100 | P | $4.38 | 12/29/06 |
| 1,800 | P | $4.38 | 12/29/06 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## PLAINTIFF'S CERTIFICATION

Neal D Mehan irrevocable Trust ("Plaintiff") declares under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1.      Plaintiff has reviewed the complaint and authorized its filing.

2.      Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary, and Plaintiff is willing to serve as a lead plaintiff either individually or as part of a group, a lead plaintiff being a representative party who acts on behalf of other class members in directing the action.

4.      Plaintiff's transactions (transferred from Neal D mehan's uniform gift to minor Charles Schwab account) in Telik, Inc. securities during the Class Period are as follows:

| # of Shares | Purchased (P) / Sold (S) | Price Per Share | Date of Purchase/Sale |
|---|---|---|---|
| 5,000 | P | $4.38 | 12/29/06 |

5.      During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class under the federal securities laws.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court. Plaintiff understands that this is not a claim form, and that Plaintiff's ability to share in any recovery as a member of the class is unaffected by Plaintiff's decision to serve as a representative party.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 26th day of July 2007.

_____

Ramesh K. Mehan, Trustee

## PLAINTIFF'S CERTIFICATION

Rahul D. Mehan ("Plaintiff") declares under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the complaint and authorized its filing.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary, and Plaintiff is willing to serve as a lead plaintiff either individually or as part of a group, a lead plaintiff being a representative party who acts on behalf of other class members in directing the action.

4.    Plaintiff's transactions in Telik, Inc. securities during the Class Period are as follows:

| # of Shares | Purchased (P) / Sold (S) | Price Per Share | Date of Purchase/Sale |
|---|---|---|---|
| 1,000 | P | $16.28 | 12/21/06 |

5.    During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class under the federal securities laws.

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court. Plaintiff understands that this is not a claim form, and that Plaintiff's ability to share in any recovery as a member of the class is unaffected by Plaintiff's decision to serve as a representative party.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 26th day of July 2007.

_____
Ramesh K. Mehan, with Power of Attorney

## PLAINTIFF'S CERTIFICATION

Ramesh K. Mehan Family Trust ("Plaintiff") declares under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1.      Plaintiff has reviewed the complaint and authorized its filing.

2.      Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary, and Plaintiff is willing to serve as a lead plaintiff either individually or as part of a group, a lead plaintiff being a representative party who acts on behalf of other class members in directing the action.

4.      Plaintiff's transactions in Telik, Inc. securities during the Class Period are attached hereto.

5.      During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class under the federal securities laws.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court. Plaintiff understands that this is not a claim form, and that Plaintiff's ability to share in any recovery as a member of the class is unaffected by Plaintiff's decision to serve as a representative party.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 26ᵗ day of July 2007.

_____
Ramesh K. Mehan, Trustee

## ATTACHMENT TO CERTIFICATION

Telik, Inc. Securities Litigation

Name:  Ramesh Mehan Family Trust

| # of Shares | Purchased (P) / Sold (S) | Price Per Share | Date of Purchase/Sale |
|---|---|---|---|
| 3,277 | P | $16.38 | 12/14/06 |
| 200 | P | $16.37 | 12/14/06 |
| 600 | P | $16.36 | 12/14/06 |
| 100 | P | $16.35 | 12/14/06 |
| 200 | P | $16.35 | 12/14/06 |
| 100 | P | $16.34 | 12/14/06 |
| 200 | P | $16.36 | 12/14/06 |
| 500 | P | $16.34 | 12/14/06 |
| 100 | P | $16.36 | 12/14/06 |
| 300 | P | $16.35 | 12/14/06 |
| 1,123 | P | $16.34 | 12/14/06 |
| 700 | P | $16.35 | 12/14/06 |
| 23 | P | $16.34 | 12/14/06 |
| 100 | P | $16.35 | 12/14/06 |
| 100 | P | $16.34 | 12/14/06 |
| 200 | P | $16.36 | 12/14/06 |
| 100 | P | $16.35 | 12/14/06 |
| 400 | P | $16.36 | 12/14/06 |
| 1,277 | P | $16.34 | 12/14/06 |
| 100 | P | $16.35 | 12/14/06 |
| 23 | P | $16.34 | 12/14/06 |
| 277 | P | $16.35 | 12/14/06 |
| 5,000 | P | $16.63 | 12/14/06 |
| 8,099 | P | $4.77 | 12/26/06 |
| 6,901 | P | $4.76 | 12/26/06 |
| 400 | P | $4.38 | 12/29/06 |
| 200 | P | $4.37 | 12/29/06 |
| 6,211 | P | $4.39 | 12/29/06 |
| 3,755 | P | $4.38 | 12/29/06 |
| 9,434 | P | $4.37 | 12/29/06 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

# EXHIBIT E

# BROWER PIVEN
## A PROFESSIONAL CORPORATION

With offices in New York City, and Baltimore, Maryland, Brower Piven focuses it practice in the areas of complex class action and other representative litigation. The firm's practice areas, while diverse, enable Brower Piven clients to call upon experience and resources available at few firms of its size. Brower Piven clients range from institutional and large private investors, to small and large businesses, to small individual investors and retail consumers. Regardless of the size of the matter, Brower Piven provides every client with the professional service, care, and quality that Brower Piven believes every client deserves.

Attorneys at Brower Piven, some with over 25 years of experience, are nationally recognized in the class action arena. The firm's attorneys have vast experience advising and representing plaintiffs in class actions under the federal securities laws; federal and state consumer protection laws; federal and state antitrust laws; state shareholder and corporate governance laws; federal and state environmental laws; and federal RICO laws. Brower Piven attorneys have served their clients in literally hundreds of actions in virtually every state and federal court in the nation.

Some current matters in which Brower Piven has a leadership role demonstrate the scope of the firm's expertise. Brower Piven is co-lead counsel in the *In re Merck Securities, Derivative, and "ERISA" Litigation* pending in the Untied States District Court for the District of New Jersey, considered by many the largest federal securities fraud action in terms of damages in history, and co-lead and liaison counsel in the shareholder litigations challenging the proposed \$38 billion take-over of Equity Office Properties Trust, one of the largest going private transaction in business history. Brower Piven is also co-lead counsel in the following federal securities class actions: *Wagner v. Barrick Gold Corporation et al.* (S.D.N.Y); *In re Interlink Electronics, Inc. Securities Litigation* (C.D. Cal.); *In re FoxHollow Technologies, Inc. Securities Litigation* (N.D. Cal); *Levie v. Sears Roebuck & Co. et al.* (N.D. Ill.); and *In re Arotech Corp. Securities Litigation* (E.D.N.Y.). Brower Piven is or was co-lead and/or liaison counsel representing shareholders in the following merger-related class actions: *Blaz v. Pan Pacific Retail Properties, Inc. et al.* (Cir. Ct., Balt. Co.); *In re Reckson Associates Realty Corp. Shareholders Litigation* (N.Y. Sup. Ct., Nassau Co.); *In re Fairchild Corp. Shareholders Litigation* (Del. Ch.); *In re Laureate Education Shareholder Litigation* (Cir. Ct. Balt. City); *In re PHH Corporation Transaction Litigation* (Cir. Ct., Balt. Co.); *In re Huntsman Corporation Shareholder Litigation* (Del. Ch.). Brower Piven is also counsel in the consumer class action, *H&R Block, Inc. "Express IRA" Marketing Litigation,* MDL No. 1786 (W.D. Mo.).

The breadth of Brower Piven's experience, which includes extensive experience counseling and representing defendants, corporations and their executives, real estate developers and large private investors in complex commercial litigation, class and non-class action litigation, and on corporate governance matters. The firm's experience on both sides of the bar makes it uniquely qualified to provide its clients with a perspective not available from firms that solely represent plaintiffs or defendants. The success of the strategy pursued by Brower Piven's attorneys in representing their clients over the years has been demonstrated by clients and classes represented by attorneys at Brower Piven attorneys recovering over \$1 billion in past and pending recoveries.

The following is a sampling of the cases and results achieved by attorneys at Brower Piven where they have served as lead or co-lead counsel for plaintiffs:

*Stëiner v. Southmark Corporation*, No. 3-89-1387-D (N.D. Tex.), federal securities fraud class action against defunct real estate partnership marketer and its outside accountants resulting in a recovery of over $75 million in cash for investors.

*In re Petro-Lewis Securities Litigation*, No. 84-C-326 (D. Colo.), a federal securities fraud class action on behalf of limited partners and shareholders where plaintiffs recovered over $100 million in cash and benefits including the restructuring of dozens of oil and gas limited partnerships.

*In re StarLink Products Liability Litigation*, MDL No. 1403, No. 01 C 4928 (N.D. Ill.), representing all American corn farmers in nationwide litigation against manufacturer of unapproved pesticide which alleged infected the U.S. corn supply and recovering over $125 million in cash for the class member.

*Romig v. Jefferson-Pilot Life Insurance Company*, 95 CVS 9703 (Supr. Ct. N.C.), deceptive insurance sales practices action brought on behalf of a class of Jefferson Pilot life insurance purchasers, resulting in a recovery for policyholders valued at over $55 million.

*In re MicroStrategy Securities Litigation*, No. 00-473-A (E.D. Va.), a federal securities fraud class, where over $125 million was recovered for investors, the Court commented that: "Clearly, the conduct of all counsel in this case and the result they have achieved for all of the parties confirms that they deserve the national recognition that they enjoy."

*In re Arakis Energy Corporation Securities Litigation*, No. 95-CV-3431 (ARR) (E.D.N.Y.), federal securities class action against Canadian company resulting in a recovery of over $24 million for investors.

*In re Spectrum Information Technologies Securities Litigation*, CV-93-2295 (FB) (E.D.N.Y.), securities fraud action against bankrupt issuer where over $10 million in cash was recovered (including all insurance coverage available) for investors following successful trial and appeal against directors' and officers' insurance carrier who attempted to disclaim coverage.

*In re Bristol-Myers Squibb Securities Litigation*, 92-CIV-4007 (JES) (S.D.N.Y.), federal securities class action resulting in recovery of over $19 million in cash for investors.

*Steiner v. Ideal Basic Industries, Inc.*, No. 86-M-456 (D. Colo.), federal securities class action against the former *Fortune 500* cement manufacturer resulting in an over $17.5 million recovery in cash for investors.

*In re Broadwing Securities Litigation*, No. C-1-02-795 (S.D. Ohio), federal securities class action against major public utility/broadband company resulting in a recovery of over $35 million in cash for investors.

*Berger v. Compaq Computer Corporation*, No. 00-20875 (S.D. Tex.), a federal securities class action where, after a successful appeal of a question of first impression in the federal appellate courts relating to the selection of lead plaintiffs and class certification in the Fifth Circuit under the Private Securities Law Reform Act of 1995, over $29 million was recovered for investors.

*In re Bausch & Lomb Securities Litigation*, No. 01-CV-6190 (CJS) (W.D.N.Y.), federal securities class action resulting in a recovery of over $ 12.5 million for investors.

*Slone v. Fifth Third Bancorp et al.,* No.1-:03-CV-211 (S.D. Ohio), securities fraud action against one of the largest mid-west bank holding companies, resulting in a recovery of $17 million for investors.

*Poziak v. Imperial Chemical Industries, PLC, et al.,* No. 1:03 cv 2457(NRB)(S.D.N.Y.), securities fraud action against one of the United Kingdom's largest public corporations, resulting in a recovery of approximately 90% of recoverable damages in cash for investors.

*J.E. Pierce Apothecary, Inc. v. Harvard-Pilgrim Health Care, Inc., et al,* No. 98-12635-WGY (D. Mass.), unfair and deceptive trade practices action on behalf of independent Massachusetts pharmacies against Harvard Pilgrim HMO and CVS Pharmacies, Inc. resulting, after bench trial, in excess of 100% of estimated recoverable damages for the class, including trebling.

The foregoing sampling of results is the product of the depth and breadth of the professional experience of attorneys at Brower Piven.  The firm's attorneys include:

## DAVID A.P. BROWER

Mr. Brower has over 25 years of complex litigation experience.  Mr. Brower has successfully represented plaintiffs in class action securities, consumer protection, environmental, antitrust and RICO actions, and representative shareholder derivative and take-over litigation.  Mr. Brower, a member of the Bar of the State of New York, is also admitted to practice before the United States Supreme Court, the United States Courts of Appeals for the First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Eleventh Circuits, and innumerable federal and state trial courts.  Mr. Brower has participated in the prosecution as lead or co-lead counsel in successful federal securities law class actions against, among others: Imperial Chemical Industries, Fifth Third Bancorp, Southmark Corp., Ideal Basic Industries, Bristol-Myers Squibb, Tower Semiconductor, Gibson Greetings, Arakis Energy Corp., Scoreboard, Coastal Healthcare, Everest & Jennings International, B.T. Office Products, Profit Recovery, Enstar Corp., Jenifer Convertibles, Warner Communications, Sambo's Restaurants, Sunrise Savings & Loan,  Phillip Morris Companies, Bausch & Lomb, Nanophase Technologies,  Ramada Inns, Michael Stores, Inc., Consumers Power Co., Broadwing/Cincinnati Bell, Compaq Computer Corp., and Computer Associates.  Mr. Brower has also participated in the prosecution as lead or co-lead counsel in merger litigation on behalf of, among others, public shareholders of  Sheller Globe Corp., Petro-Lewis Corp., Floating Point Systems, Holnam Corp., Wometco Enterprises, Inc., Great Bay Casinos Corp., Home Shopping Networks, MCA, Holly Sugar Co., and ARM Financial Group; and

shareholder derivative actions on behalf of shareholders of Banner Industries, Marsh & McLennan Companies, and Merrill Lynch, Pierce, Fenner & Smith.

Since 2004, Mr. Brower has been one of the lead attorneys with day-to-day responsibility for the prosecution of the securities fraud claims in *In re Merck & Co, Securities, Derivative & ERISA Litigation*, MDL No. 1658, No. 2:05-CV-02367 (D. N.J.), an action where the damages to class member are estimated to be among the largest in the history of federal securities class litigation. Additionally, while at his former firm, Mr. Brower was one of the attorneys with primary responsibility for class certification issues, including successfully arguing the class certification motion before the trial court, in *In re Initial Public Offering Securities Litigation*, 21 MC 92 (S.D.N.Y.), among the largest securities litigations ever prosecuted, encompassing approximately 309 consolidated class action cases alleging market manipulation claims in connection with the initial public offering of securities by over 55 defendant underwriters. Mr. Brower also served as liaison counsel in *In re Sotheby's Holding, Inc. Securities Litigation*, No. 00 Civ. 1041 (S.D.N.Y.), which resulted in a recovery of over $75 million for Sotheby's investors.

Mr. Brower has also served as lead or co-lead counsel in consumer fraud actions against Aventis CropScience, Compaq Computer Corporation, Jefferson-Pilot Life Insurance Company, Sprint PCS Wireless, Metropolitan Life Insurance, Harvard Pilgrim Healthcare, and CVS Corporation. In the antitrust field, Mr. Brower acted as lead counsel in litigation against Monsanto Company, E. I. du Pont de Nemours and Company and Pioneer Hybrid International, Inc. (No. 4:05-CV-01108-ERW (E.D. Mo.)), on behalf of genetically modified seed purchasers, and has participated in the *In re Initial Public Offering Antitrust Litigation*, No. 01 CIV 2014 (WHP) (S.D.N.Y.),.

In the area of environmental law, Mr. Brower has served as one of the lead attorneys in pollution actions on behalf of Oklahoma landowners against chicken producers, including Tyson Foods, Inc.; and counsel for Missouri landowners in pork producer nuisance actions against Contigroup Companies, Inc. (formerly Continental Grain) and Premium Standard Farms, which recently resulted in verdicts in favor of neighboring farmers.

Before joining Brower Piven, Mr. Brower also has represented a nationwide class of hospitals in RICO litigation against Tenet Healthcare Corporation based on claims that its conduct caused class member hospitals to receive reduced "Outlier" reimbursements from Medicare.

Mr. Brower has also: represented: directors and officers of public companies in securities class actions, including the directors of Heritage Hospitals; represented a former multi-state hospital developer; advised boards of directors of public companies regarding their fiduciary responsibilities; provided opinions as special counsel under Delaware law to public companies, including MGM/UA; represented insurance and reinsurance companies in coverage litigation, including matters involving Johns Manville, PepsiCo and Hilton Hotels; represented commodities dealers and brokers in connection with Commodities Futures Trading Commission reparations actions; represented foreign corporations in United States litigation, including one of Japan's largest electronics, international hotel and resort companies in litigation against its American counsel and financial advisors; represented a Brazilian trust holding claims for one of Brazil's largest telecommunications companies; and defended a large, Florida-based, national

mortgage brokerage company, Foundation Funding, in class action litigation brought under the Truth In Lending Act.

Mr. Brower, is a graduate of Columbia College of Columbia University (A.B. 1979), and the Georgetown University Law Center (J.D. 1982), and he attended King's College, University of London (1980), where he studied comparative, international, and EC transactional law. Mr. Brower regularly lectures before professional organizations and at CLE-accredited conferences on the class action procedures and securities laws and shareholder and investor rights, including the American Law Institute/American Bar Association Advanced Course of Study Program, the Practicing Law Institute, and the New York State Bar Association. Mr. Brower regularly writes on class action procedures and new issues in class action jurisprudence. Mr. Brower is a long-time member of the New York State Bar Association Subcommittee on Class Actions, has participated as a member of the Executive Committee of the National Association of Securities and Consumer Law Attorneys, and actively participated in legislative initiatives relating to the Private Securities Litigation Reform Act of 1995 and the Class Action Fairness Act of 2005.

## CHARLES J. PIVEN

Mr. Piven is a seasoned litigator who has led his own practice since 1990. During his 29 years in practice, Mr. Piven has represented individuals, partnerships, trusts, pension plans and corporations in many types of cases. Mr. Piven's experience includes litigation in the areas of complex securities, shareholder, consumer protection, personal injury and property damage class actions, merger and acquisition class actions, bankruptcy, first amendment, copyright, employment, wrongful death, and legal, medical, accounting and broker malpractice.

Class and representative actions in which Mr. Piven has served as lead, co-lead, liaison or local counsel include, among others, Baltimore Bancorp securities litigation, USFG securities litigation, Yorkridge Calvert Savings & Loan securities litigation, Maryland National Bank securities litigation, Reckson Associates Realty Company derivative litigation, Read-Rite Corporation securities litigation, Mid-Atlantic Realty shareholder merger litigation, Pan Pacific Realty shareholder merger litigation, Allied Irish Banks derivative litigation, Sprint Spectrum Cellular Telecommunications Company consumer litigation, IWIF Wiretap consumer litigation, Land Rover Group Ltd. consumer litigation, Cellular One consumer litigation, H&R Block Refund Anticipation Loan consumer litigation, Prison Telephone consumer litigation, and BlueCross/Blue Shield consumer litigation.

In recent years, Mr. Piven has taken an active role in the prosecution of litigation relating to allegations that mutual fund investors have been victimized by directed brokerage arrangements, excessive fees, excessive commissions and deceptive sales practices or other actionable conduct. Some of the mutual fund families and brokerage firms involved in these cases that Mr. Piven has been responsible for originating include: Lord Abbott, AIM/Invesco, BlackRock, Davis, Eaton Vance, Dreyfus, Evergreen, Federated, Alliance, Franklin, Hartford, MFS, PIMCO, Scudder, Columbia, Goldman Sachs, Merrill Lynch, Morgan Stanley, Salomon Smith Barney, Edward Jones, UBS, Wells Fargo and American Express. Investors in mutual fund cases initiated or led by Mr. Piven's clients have achieved a proposed settlement with mutual fund marketer Edward

Jones for over $125,000,000 and approved settlements with American Express for approximately $100,000,000 and with Merrill Lynch for approximately $39,000,000.

Mr. Piven also directly represents the lead plaintiff(s) and/or proposed class representative(s) in approximately 25% of the 309 cases encompassed by the Initial Public Offering Securities Litigation pending in the Southern District of New York, and Mr. Piven and the firm have taken an active role in the discovery in this litigation.

Mr. Piven also has experience in the field of ERISA class actions on behalf of former and current company employees.   ERISA cases in which Mr. Piven is or has been counsel for named plaintiffs include:  Aquila ERISA litigation (W.D. Mo.); General Motors ERISA litigation (E.D. Mich.); ConAgra Foods ERISA litigation (D. Neb.); the Coca-Cola Enterprises ERISA litigation (N.D. Ga.); Fannie Mae ERISA litigation (D. D.C.); Delphi ERISA litigation (E.D. Mich.); Ford Motor Company ERISA litigation (E.D. Mich.) and the Pfizer ERISA litigation (S.D.N.Y.).

Mr. Piven is a 1975 graduate of Washington University and a 1978 graduate of the University of Miami School Of Law.   During law school, Mr. Piven was a student law clerk for the late Honorable United States District Judge C. Clyde Adkins of the Southern District of Florida.  Mr. Piven was admitted to the bars of the States of Florida (currently inactive) and Maryland in 1978. Mr. Piven is a member in good standing of the Court of Appeals of Maryland, the United States Court of Federal Claims, the United States Tax Court, the United States District Court for the Districts of Maryland and Colorado, and the United States Courts of Appeals for the First and Fourth Circuits.

## MARSHALL N. PERKINS

Mr. Perkins practices in the firm's consumer and securities class action, shareholder, complex professional negligence, and tort litigation areas. Additionally, Mr. Perkins is currently, or has been actively involved with, prosecuting claims on behalf of landowners in Harford County, Maryland proceeding in the United States District Court for the Southern District of New York relating to MTBE contamination; claims of computer/hardware owners for deceptive sales practices; claims of Maryland landowners for trespass by Comcast Corp. for its overhead transmission lines; and a number of complex professional negligence cases in the Maryland Circuit Courts.

Illustrative of his previous experience, Mr. Perkins has successfully represented a proposed class of tax advisory customers alleging consumer protection claims before Maryland's highest court, *see Green v. H & R Block*, 355 Md. 488, 735 A.2d 1039 (1999); and a proposed class alleging violation of Maryland's wiretap statute, in *Schmerling v. IWIF*, 368 Md. 434, 795 A.2d 715 (2002).  Mr. Perkins' business litigation experience includes representing the bankruptcy trustee in several contingent litigation matters in *In re TimeWorldCom, Inc.*, Case No. 99-1-7353-PM, 905 A. 2d 842 (Bankr. D. Md. 2006).

Mr. Perkins is a 1997 *magna cum laude* graduate of the University Of Baltimore School Of Law, where he was a staff editor for the *University of Baltimore Law Forum*. Mr. Perkins graduated Phi Beta Kappa, *magna cum laude*, with a Bachelor of Arts degree from the University of

Maryland, College Park. Mr. Perkins is a member of the Bar of the State of Maryland, as well as the Bars of the Maryland Federal District Court and the United States Court of Appeals for the Fourth Circuit.

Following receipt of his *juris doctor* in May, 1997, Mr. Perkins was a law clerk to the Honorable Irma S. Raker, Judge, Court of Appeals of Maryland, Maryland's highest court. Mr. Perkins' publications include: Note, *United States v. Virginia, State May Not Maintain a "Unique" Single-Sex Educational Facility Without Providing a Comparable Facility to the Excluded Gender*, 27.1 U. Balt. L. Forum 51 (1996); *Beyond the Roar of the Crowd: Victim Impact Testimony Collides With Due Process*, 27.2 U. Balt. L. Forum 31 (1997).

### ELIZABETH A. SCHMID

Ms. Schmid is a member of the Bar of the State of New York. Ms. Schmid earned her *juris doctor* at the University of Buffalo in May 2005, where she was a National Criminal Moot Court Finals Competitor (Spring, 2005); Wechsler Intramural Moot Court Competition Winner (Fall 2004); Mock Trial competitor, Erie County Courthouse (Fall, 2004); and a contributor to the *Buffalo Women's Law Journal* (Spring, 2005). Ms. Schmid attended Sweet Briar College in Lynchburg, Virginia, and received her Bachelor of Arts from Stony Brook University in May 2000

Following her law school graduation, Ms. Schmid commenced her practice in the Office of General Counsel, Merrill Lynch, Pierce, Fenner & Smith, Inc., in New York City, where she participated in day-to-day management of significant litigation and risk management projects, and assisted in preparation of reports and litigation studies relating to securities claims, broker/dealer disputes, and investor/customer complaints.

Prior to graduating from law school, Ms. Schmid worked as a law clerk at New York's Paul, Weiss, Rifkind, Wharton, & Garrison LLP (2005), where she concentrated on large-scale discovery projects; and Watson, Bennett, Colligan, Johnson & Schechter, LLP in Buffalo, NY (2003-2004), where she obtained experience in the areas of insurance, real estate, environmental, employment, and bankruptcy law. Ms. Schmid also served in 2004 as a Legal Intern in the Office of the District Attorney for Suffolk County, New York.

**BROWER PIVEN**
A PROFESSIONAL CORPORATION

THE WORLD TRADE CENTER-BALTIMORE
401 EAST PRATT STREET, SUITE 2525
BALTIMORE, MARYLAND 21202

TELEPHONE:  (410) 332-0030
TELECOPIER: (410) 685-1300

488 MADISON AVENUE
EIGHTH FLOOR
NEW YORK, NEW YORK 10022

TELEPHONE:  (212) 501-9000
TELECOPIER: (212) 501-0300

# EXHIBIT F

## SCHUBERT & REED LLP

PRACTICE AND HISTORY

**Schubert & Reed LLP** is AV rated by the Martindale-Hubbell Law Directory. Together with its predecessor firms, the Law Offices of Robert C. Schubert and the Law Offices of Juden Justice Reed, it has been in operation for over twenty-five years. In addition to prosecuting cases in the California federal and state courts, the firm has been actively involved in multi-district securities and other class actions throughout the United States. Schubert & Reed has been Lead Counsel or Co-Lead Counsel in class actions and shareholder derivative cases which have produced monetary recoveries of over $315 million. These have included the following:

**Tucker v. Scrushy, et al.**, No. CV-02-5212 (Alabama Circuit Court, Jefferson County). Co-Lead Counsel in shareholder derivative action on behalf of HealthSouth Corporation alleging officer and director breaches of fiduciary duty and insider trading arising from a multi-billion dollar restatement of previously reported financial results. Partial summary judgment for unjust enrichment granted against former CEO Richard Scrushy for restitution to HealthSouth of $47.8 million bonuses with interest paid to Scrushy during fiscal years 1997-2002 pursuant to a stated policy requiring that bonuses be paid from net profits. In fact, following restatement, it was revealed that the Company had never had net profits from which to pay Scrushy bonuses during the fiscal years 1997-2002. The judgment was affirmed on appeal to the Alabama Supreme Court, **Scrushy v. Tucker**, ---So.2d ----, 2006 WL 2458818, Ala., August 25, 2006 (1050564.). Plaintiffs thereafter settled HealthSouth's claims against additional HealthSouth directors and officers for $100 million. **Tucker v. Scrushy, et al.**, No. CV-02-5212 (Alabama Circuit Court, Jefferson County)(Order dated January 11, 2007). Co-Counsel in a related case, **In re HealthSouth Corp. Shareholders Litigation**., 845 A.2d 1096 (Del. Ch. 2003), aff'd 847 A.2d 1121 (Del.Supr. 2004), in which the Delaware Chancery Court granted summary judgment for unjust enrichment and equitable fraud against Richard Scrushy arising from his purported repayment with HealthSouth stock of a $25 million loan that Scrushy was obligated to pay in cash. The judgment resulted in an immediate $17.5 million recovery to HealthSouth. Collectively, we obtained in excess of $165 million in judgments against Scrushy and other HealthSouth fiduciaries for the benefit of HealthSouth and its shareholders.

**Bonneville Pacific Corporation Securities Litigation**, No. 92-C-181-S (District of Utah). Co-Lead Counsel in securities class action involving fraudulent financial statements by a large power cogeneration company. We obtained settlements totaling $26 million for the class, which recovered 100% of its damages, in one of the largest securities fraud cases in Utah history. We also obtained a decision from the Utah Supreme Court holding that plaintiffs need not plead or prove reliance to proceed under the Utah Uniform Securities Act. **Gohler v. Wood**, 919 P. 2d 561 (Utah 1996).

**Qwest Communications International, Inc. Derivative Litigation**, No. 02-CV-8188 (Colorado District Court, City and County of Denver). Co-Lead Counsel in shareholder derivative action alleging officer and director breaches of fiduciary duty and insider

trading arising out of massive earnings restatement by telecommunications company. Defendants attempted to derail the case, seeking a stay based upon previously filed but inactive Federal derivative action. We defeated the motion, reviewed and analyzed over 7 million pages of documents, and recovered $25 million for the company. The settlement included important corporate governance changes, including the requirement of a lead independent director when the chairman of the board is also the chief executive officer.

**Kirschenbaum v. Electronic Arts, Inc.**, Case No. CIV 440876 (California Superior Court, San Mateo County). Co-Lead Counsel in class action seeking to recover unpaid overtime compensation for computer graphics artists employed in California by Electronic Arts Inc. ("EA"), the world's largest manufacturer of computer video games. The case was settled after the parties conducted formal and informal discovery, and we reviewed thousands of pages of company records. The settlement totaled $15.6 million, for approximately 618 class members. We believe this is the first class action involving recovery of overtime compensation for computer graphics artists in the electronic game industry.

**Raider v. Sunderland**, Civil Action No. 19357 NC (Delaware Chancery Court).  Co-Lead Counsel in shareholder class action alleging breach of fiduciary duty by controlling shareholders of large cement company in connection with its acquisition of related company owned by controlling shareholders.  We recovered $15 million ($8 per share) for minority shareholders after obtaining class certification, reviewing approximately 30,000 documents, deposing numerous fact and expert witnesses, and preparing the case for trial.  The recovery exceeded 50% of the damage calculation of plaintiff's valuation expert.

**ADAC Laboratories Derivative Litigation**, No. CV 779262 (California Superior Court, Santa Clara County). Co-Lead Counsel in shareholder derivative action alleging officer and director breaches of fiduciary duty and insider trading arising from false financial statements issued by a scientific instruments manufacturer. These financial statements were restated after "side letters" and other improper revenue recognition practices were uncovered.  Defendants sought a stay based upon federal securities class actions arising from the same facts.  We defeated that motion, obtained thousands of documents well ahead of the federal actions, and recovered $12 million for the company, representing the bulk of its insurance coverage.

**In Re Savings Investment Service Corporation Loan Commitment Litigation**, MDL 718 (Western District of Oklahoma). Co-Lead Counsel in securities class action arising from default of $9.85 million issue of industrial revenue bonds issued to finance a hotel in Westminster, Colorado. After extensive discovery and motion practice we obtained a recovery of approximately $8.0 million for the class.

**Emulex Shareholder Derivative Cases,** Judicial Coordination Proceeding No. 4194 (California Superior Court, Orange County). Co-Lead Counsel in shareholder derivative actions alleging officer and director breaches of fiduciary and insider trading arising from order delays for optical networking hardware. Although the case was initially stayed, we

succeeded in lifting the stay and obtaining over 100,000 pages of company documents, eventually obtaining an $8 million settlement for the company.

**Garbini v. Protection One, Inc.,** Civil Action No. 99-3755 (Central District of California). Lead Counsel in securities class action arising from three successive restatements of three years' audited and publicly reported financial results by America's second-largest home security monitoring company. Plaintiffs asserted claims under Section 11 of the Securities Act of 1933 and Section 10 of the Securities Exchange Act of 1934, alleging use of an excessively long period to amortize the cost of acquired customer accounts. We obtained a settlement of $7.76 million for the class. In a related appeal, we successfully challenged the dismissal of the company's auditors, Arthur Andersen. The ruling clarified plaintiffs' obligations to allege damages under the Securities Act of 1933. **Garbini v. Protection One, Inc.,** [Current Binder] Fed. Sec. L. Rep.(CCH) ¶92,018 (9[th]Cir. October 11, 2002).

**In Re Providian Financial Corporation Derivative Litigation**, Case No. 401954 (California Superior Court, City and County of San Francisco). Co-Lead Counsel in shareholder derivative action alleging breaches of fiduciary duty and insider trading by officers and directors of a large sub-prime credit card lender. Case arose from company's undisclosed change of accounting for customer bankruptcies and alleged failure to maintain adequate reservers for uncollectible accounts. After extensive document discovery we obtained a settlement of $6.5 million for the company.

**In Re Structural Dynamics Research Corporation Derivative Litigation**, Case No. C-1-94-650 (Southern District of Ohio). Co-Lead Counsel in shareholder derivative action arising from earnings restatement resulting from accounting fraud in the Far East operations of NASDAQ-listed computer software company. After extensive discovery, we obtained a settlement of $5.0 million for the company. (SDRC)

**In Re S3 Derivative Litigation,** No. CV-77-0254 (California Superior Court, Santa Clara County). Co-lead counsel in shareholder derivative litigation involving S3, now known as SonicBLUE Corporation, which was a leading manufacturer of graphics accelerator chips. Case arose from earnings restatements and alleged insider trading resulting from improper recognition of revenue on sales in Far East. After discovery, we obtained a cash settlement of $4.65 million for the company, which represented the bulk of insider trading damages. (SBLU)

**In Re VISX Securities Litigation**. Master File No. C94-2-649-RPA (Northern District of California). Co-Lead Counsel in securities class action arising from misrepresentations as to status of clinical trials by a NASDAQ-listed laser vision correction company. We obtained a settlement of $4.0 million for the class. (VISX)

**Isaac v. Falcon Classic Cable Income Properties, L.P., et al**., No. BC-177205 (California Superior Court, Los Angeles County). Lead Counsel in class action arising from general partner's purchase of the assets of a cable television limited partnership at

allegedly inadequate price. We obtained a recovery of $2.8 million for the limited partners.

**Bilunka v. Sanders,** [1994-95 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶98,314 (N.D. Cal. 1994).  Co-lead counsel in shareholder derivative action arising from misrepresentations by officers and directors of Advanced Micro Devices, a leading microchip manufacturer, regarding a purportedly "clean" clone of a microchip developed by Intel Corporation.  The opinion by Judge Ware of the Northern District of California established two key principles for California derivative cases:  (1) California's insider trading statute, Corporations Code §25502.5, applies to California based corporations incorporated in Delaware, and (2) where the board of directors is evenly divided between interested and disinterested members, a shareholder demand upon the board is futile and therefore excused.  We ultimately obtained a recovery of $2.25 million for the company.

**In re IDB Communications Group, Inc. Securities Litigation**, Master File No. CV-94-3618-RG (JGX) (Central District of California). Co-Lead Counsel in shareholder derivative action arising from misleading financial statements issued by NASDAQ-listed telecommunications company. We obtained a settlement of $2.0 million for the company.

**In re Atchison Casting Corporation Securities Litigation**, Master File No. 01-2013-JWL (District of Kansas).  Lead Counsel in a securities class action arising from the restatement of four years' of audited financial results by this Kansas-headquartered operator of 20 ferrous casting facilities, following revelation of accounting improprieties at the company's Pennsylvania Foundry Group.  We obtained a settlement of $1.8 million for the class.

**In Re Bexar County Health Facilities Development Corporation Securities Litigation**, MDL 768 (Eastern District of Pennsylvania). Co-Lead Counsel in securities class action arising from default of industrial revenue bonds issued to finance a retirement facility in San Antonio, Texas. We obtained a settlement of $1.5 million for the class.

**Eleanor Gorsey, et al. v. I.M. Simon & Co., Inc., et al.**, 121 F.R.D.135 (D. Mass 1988). Co-Lead Counsel in securities class action litigation arising from default of industrial revenue bonds issued to finance a retirement facility in South Bend, Indiana. We obtained a settlement of $1.2 million for the class.

**Sheehan v. Little Switzerland**, 136 F. Supp. 2d 301 (D. Del 2001).  Lead counsel in securities class action arising from failed merger between Little Switzerland, Inc., a duty-free retailer, and Destination Retail Holdings Corporation, a Bahamian retailer.  The court upheld plaintiff's claim that the company's disclosures regarding the financing for the merger were false and misleading, and that plaintiff's allegations of wrongful intent satisfied the strict pleading standards of the Private Securities Litigation Reform Act of 1995.  We obtained a recovery of $1.05 million for the class, representing approximately 75% of estimated damages. (LSVI)

**Veterinary Centers of America Securities Litigation**, Case No. BC 178 615 (California Superior Court, Los Angeles County). Lead Counsel in shareholder derivative action arising from misrepresentations and insider trading by officers and directors of publicly traded chain of veterinary hospitals. We obtained a recovery of $1.0 million for the company. (VCAI)

**Cirrus Logic Securities Litigation**, Master File No. C-95-3978-EAI (Northern District of California). Lead Counsel in shareholder derivative action resulting from overstated financial statements and other violations of generally accepted accounting principles by large manufacturer of multimedia products. We obtained a settlement of $1.0 million for the company. (CRUS)

Schubert & Reed LLP has also participated as counsel in class action or derivative cases involving the following companies:

3M Corporation (MMM)
aaiPharma Inc. (AAII)
ABM Industries Incorporated (ABM)
Abbott Laboratories, Inc. (ABT)
Activision, Inc. (ATVI)
Adaptec, Inc. (ADPT)
Adobe Systems Incorporated (ADBE)
Adelphia Communications Corporation (ADLA)
Advanced Micro-Circuits Corporation (AMCC)
Advanced Micro Devices (AMD)
Alcatel Alsthom (ALA)
Amazon.com, Inc. (AMZN)
America First Financial (AFFFZ)
America Online, Inc. (AOL)
American Bank Note Holographics, Inc. (ABH)
American Express Company (AXP)
American Income Life Insurance Company
Archer-Daniels-Midland Company (ADM)
Ariba, Inc. (ARBA)
Ash Grove Cement Company (ASHG.PK)
Aspec Technology, Inc. (ASPC)
Assisted Living Concepts, Inc. (ALF)
Atchison Casting Corp. (FDY)
Aurora Foods, Inc. (AOR)
Bay Area Cellular Telephone Co. (BACTC)
Blockbuster Video (BBI)
Borders Group, Inc.
Boston Scientific Corporation (BSX)
Bre-X Corporation (BXMN)
Broadcom Corporation (BRCM)

Brocade Communications Systems, Inc. (BRCD)
California Amplifier, Inc. (CAMP)
Callidus Software Inc. (CALD)
Candies, Inc. (CAND)
Caremark, Inc. (CMX)
Caremark International Inc.
Caribbean Cigar Co. (CIGRD, CIGRW)
Centennial Technologies, Inc. (CENL)
Chalone Wine Group Ltd.
Charles Allmon Trust
Chiron Corporation
Cisco Systems, Inc. (CSCO)
Citizen Utilities Company (CZN)
CNF, Inc. (CNF)
Complete Management, Inc. (CPMI)
CompuMed, Inc. (CMPD)
Coram Healthcare Corporation (CRH)
Corrpro Cos. Inc. (CO)
Creative Technology Ltd. (CREAF)
Critical Path, Inc. (CPTH)
Cyberguard Corporation (CYBG)
Cylink Corporation (CYLK)
Del Global Technologies Corporation (DGTC)
Digital Equipment Corp. (DEC pa)
Digital Lightwave, Inc. (DIGL)
Ditech Communications Corp. (DITC)
DoubleClick, Inc. (DCLK)
eBay, Inc. (EBAY)
Electronic Arts, Inc. (ERTS)
Employee Solutions, Inc. (ESOL)

Emulex Corporation (EMLX)
Enron Corporation
Fen-Phen Diet Pill Litigation
Fine Host Corp. (FINE)
First Merchants Acceptance Corp. (FMAC)
First Virtual Communications, Inc. (FVC)
Flat Glass Antitrust Litigation
FLIR Systems Inc. (FLIR)
Ford Motor Company (F)
Formula One Administration, Ltd.
FPA Medical Management, Inc. (FPAM)
Frederick's of Hollywood
Fujitsu Computer Products of America
FVC.COM, Inc. (FVCC)
Gateway, Inc. (GTW)
Gencor Industries, Inc. (GCRX)
Genzyme Corporation (GENZ)
Greyhound Lines, Inc. (BUS)
Guidant Corporation (GDT)
H&R Block, Inc. (HRB)
Hanover Compressor Company (HC)
HealthSouth Corporation (HLSH )
Herbalife International, Inc. (HERBA)
Hewlett-Packard Corporation (HPQ)
The Home Depot, Inc. (HD)
Honda Motor Company (HMC)
HPL Technologies, Inc. (HPLA)
Indianapolis Motor Speedway Corp.
Impac Mortgage Holdings, Inc. (IMH)
Informix Corporation (IFMX)
Inso Corporation (INSO)
Intel Corporation (INTC)
Intershop Communications AG (ISHP)
Interspeed, Inc. (ISPD)
JDS Uniphase Corporation (JDSU)
JWP, Inc.
Ketema
Kidder Peabody & Co.
Kinder Morgan
Knoll, Inc.(KNL)
Koger Properties
Legato Systems, Inc. (LGTO)
Lernout & Hauspie Speech Products, N.V.
(LHSP)
Littlefield, Adams & Company (FUNW)
Logitech, Inc.

Louisiana-Pacific Corporation (LPX)
Macromedia, Inc. (MACR)
Marsh & McLennan Companies, Inc. (MMC)
Martha Stewart Living Omnimedia, Inc. (MSO)
Maxxam, Inc. (MXM)
McKesson HBOC, Inc. (HBOC)
Medaphis Corporation (MEDA)
Media Vision
Med/Waste, Inc. (MWDSE)
Mercury Finance Company (MFNNQ)
Mercury Interactive Corporation (MERQ)
Micron Technology, Inc. (MU)
Mirant Corporation (MIR)
Mitek Systems, Inc. (MITK)
Molina Healthcare, Inc. (MOH)
Motorcar Parts & Accessories, Inc. (MPAA)
NetManage, Inc. (NETM)
Netopia, Inc. (NTPA)
Network Computing Devices, Inc. (NCDI)
Network Solutions, Inc. (NSOL)
New Century Financial Corporation (NCEN)
Networks Associates, Inc. (NETA)
Network Solutions, Inc.
North Face Inc. (TNFI)
Novartis AG (NVS)
OCA, Inc. (OCA)
Orbital Sciences Corporation (ORB)
Pacific Gateway Enterprises
Pacific Telephone Company
Palm, Inc. (PSRC)
PalmOne, Inc. (PLMO)
PennCorp Financial Group, Inc. (PFG)
PeopleSoft, Inc. (PSFT)
Peregrine Systems, Inc. (PRGN)
PerkinElmer, Inc. (PKI)
Philip Services Corporation
Phycor, Inc. (PHYC)
Presstek Inc. (PRST)
Protection One, Inc. (US:POIX)
Providian Financial Corporation (PVN)
Quaker State Corporation (KSF)
Qwest Communications International Inc. (Q)
Quantum Corporation (DSS)
Quintus Corporation (QNTS)
Quovadx, Inc. (QVDX)
Rambus, Inc. (RMBS)
Riverstone Networks, Inc. (RSTN)

Roberds, Inc. (RBDS)
Saf T Lok, Inc. (LOCK)
Safeskin Corporation (SFSK)
Safety-Kleen Corporation (SKLN)
Salomon Bros.
Schlotzsky's Inc. (BUNZ)
Seagate Technology Inc. (SEG)
Secure Computing Corporation (SCUR)
Shiva Corporation (SHVA)
Silicon Graphics, Inc. (SGI)
Silicon Image, Inc. (SIMG)
Silicon Storage Technology, Inc. (SSTI)
Sipex Corporation (SIPX)
Sirena Apparel Group,Inc. (SIRN)
SmarTalk Teleservice, Inc. (SMTK)
Sonus Networks, Inc. (SONS)
Sony Computer Entertainment America, Inc.
Spanlink Communications, Inc. (SPLK)
Spectrum Information Technologies, Inc. (SITI)
Sprint Spectrum L.P. (FON)
Star Gas Partners, L.P. (SGU)
Sumitomo Metal Industries, Ltd. (SMMLY)
Summit Technology, Inc. (SMCT)

SupportSoft, Inc. (SPRT)
Sybase, Inc. (SYBS)
Syncronys Softcorp (SYCR)
T2
Telebit Corporation
Telxon Corporation (TLXN)
Tenera, Inc. (TNR)
Terayon Communication Systems, Inc. (TERN)
Tibco Software, Inc. (TIBX)
Toys R Us, Inc. (TOY)
Tut Systems, Inc. (TUTS)
TwinLab Corporation (TWLB)
Unify Corporation (UNFY)
U.S. Trust Corporation
U.S. West, Inc. (USW)
U.S. Wireless Corporation
Ventro Corporation
Verisign, Inc. (VRSN)
Versata, Inc. (VATA)
Websecure, Inc. (WEBS)
Worldcom, Inc. (WCOEQ)
Xicor, Inc.

## ATTORNEYS

**ROBERT C. SCHUBERT** received a B.S. degree from the New York State School of Industrial and Labor Relations at Cornell University in 1966, where he graduated first in his class. He received his J.D. cum laude from Harvard Law School in 1969, after which he taught law, first at the Columbia University School of Law (1969-1970), and then at Golden Gate University School of Law (Assistant Professor, 1970-1975). Since that time he has been actively engaged in the practice of law, at both the trial and appellate levels. He specializes in complex litigation, particularly securities and antitrust class actions and shareholder derivative suits. He is a member of the State and Federal bars of California (since 1974), Massachusetts (since 1972) and New York (since 1970). In addition he has been admitted pro hac vice in the following courts, among others: United States District Courts for the Eastern District of Pennsylvania, the Middle District of Florida, the Northern District of Georgia, the Southern District of Ohio, the Western District of Oklahoma, the Western and Northern Districts of Texas, the Northern and Central Districts of Illinois, the Districts of Colorado, Oregon, Delaware, Utah, Montana, Arizona and New Hampshire, the Superior Courts of Alabama, Alaska, Colorado and Illinois, and the Delaware Court of Chancery. He has participated in discovery proceedings throughout the United States and the United Kingdom. He is also an arbitrator, and since 1971 has arbitrated numerous disputes under the auspices of the Federal Mediation and Conciliation Service. He is the author of several published articles.

**JUDEN JUSTICE REED** obtained his A.B. degree from Columbia University in 1983. He was awarded his J.D. degree by Fordham University School of Law in New York, and served as Editor-in-Chief of the Fordham International Law Journal. Mr. Reed was admitted to the practice of law in Connecticut in 1986, in New York in 1989 and in California in 1991. He specializes in both complex litigation and in corporate law, including corporate finance, securities regulation and mergers and acquisitions. Mr. Reed has devoted extensive time to corporate governance litigation in recent years, including the negotiated adoption of comprehensive corporate governance reforms in resolution of shareholder derivative actions, both preceding and following the enactment of the Sarbanes-Oxley Act of 2002. Mr. Reed has been admitted pro hac vice in numerous federal and state courts, and has participated in the prosecution and defense of cases throughout the United States and before the U.S. - Iran Claims Tribunal at The Hague, Netherlands. Previously, Mr. Reed was associated with Wall Street's Carter, Ledyard & Milburn, where he was actively involved in corporate finance, mergers and acquisitions and represented both issuers and underwriters in the public sale of securities. Mr. Reed is presently an advisor to the Institute for Law and Economic Policy.

**WILLEM F. JONCKHEER** received his B.A. degree from Colgate University in 1990. He was awarded his J.D. degree in 1995 from the University of San Francisco School of Law. He has been a law intern with the Pacific Stock Exchange and the U.S. Securities & Exchange Commission. Mr. Jonckheer was admitted to the State Bar of California in 1995.

**AARON H. DARSKY** received his B.A. from Michigan State University College of Business in 1990. He was awarded his J.D. degree in 1998 from the Golden Gate University School of Law, with a Certificate of Specialization in Litigation. He has been a law intern with the Santa Clara County Office of the Public Defender and a teaching assistant in the Litigation Program at Golden Gate University School of Law for Professor Bernard Segal. Mr. Darsky was admitted to the State Bar of California in 2001 and is also admitted to practice in the United States District Courts for the Northern, Central and Southern Districts of California and the United States Court of Appeals for the Ninth Circuit.

**MIRANDA P. KOLBE** received her B.A. from Hamilton College in 1984. She was awarded her J.D. degree in 1999 from the University of California at Berkeley, Boalt Hall. She served as a full-time legal researcher in the Civil Division of the San Francisco Superior Court during 2000-2001. Ms. Kolbe was admitted to the State Bar of California in 2001.

**PETER E. BORKON** received his B.A. degree from DePauw University in 1992 and his J.D. from Southern Illinois University at Carbondale in 1996. Since that time, he has actively engaged in the practice of law at the trial and appellate levels. Mr. Borkon clerked for the Chief Judge of the Southern District of Illinois as well as for the Ninth Circuit Court of Appeals. His practice is focused on complex civil litigation, particularly securities and antitrust class actions and shareholder derivative suits. Mr. Borkon was admitted to the Illinois bar in 1996 and the California bar in 2001. He is also admitted to practice before all federal courts in the States of California and Illinois as well as the Supreme Court of the United States and the Eastern and Western Districts of Wisconsin and the District of Colorado. Mr. Borkon is the author or co-author of several published articles including: Potential Impacts of the Class Action Fairness Act of 2004, Journal of the Antitrust and Unfair Competition Law Section of the California State Bar (Spring 2004); Save the Case Using the Discovery Rule, Association of Trial Lawyers of America, Trial Magazine (2002); Class Certification in Unfair Business Practices Cases, California Antitrust Law, Antitrust and Unfair Competition Law Section of the State Bar of California (May 2003); and Exclusive Contracts: Are Constructively Terminated Incumbent Physicians Entitled to a Fair Hearing?, 17 Journal of Legal Medicine (March 1996). Mr. Borkon recently served as the Co-Chair of the Board of Directors of the AIDS Legal Referral Panel and serves as a member of the Bay Area Lawyers for Individual Freedom's Judicial Review Committee. He was also a Steinberg Leadership Fellow with the Anti-Defamation League.